Annette G. CARR

v.

James Arthur WARNER et al.

Civ. A. No. 52-884.

United States District Court
D. Massachusetts.

Dec. 30, 1955.

Brickley, Sears & Cole, Howard W. Cole, John L. Lyman, Boston, Mass., for plaintiff.

Spencer Pinkham, New York City, Joseph J. Gottlieb, Edward F. McLaughlin, Jr., Boston, Mass., for defendant.

WYZANSKI, District Judge.

1. This is an action, filed August 5, 1952, alleged to be based upon § 17 of the Securities Act of 1933, 15 U.S.C.A. § 77q; §§ 10(b) and 15(c) of the Securities Exchange Act of 1934, 15 U.S.C.A. §§ 78j(b), 78o(c) and rules and regulations of the Securities and Exchange Commission adopted thereunder. Jurisdiction to hear this controversy is asserted to rest upon 15 U.S.C.A. § 78aa.

2. August 5, 1952 plaintiff, a citizen of Massachusetts, filed in this Court against three defendants a complaint in four counts. The first named defendant, James Arthur Warner, whose residence (not citizenship) was alleged to be California, is the sole surviving partner of a partnership which until May 31, 1946 was engaged in business as a broker and dealer in securities under the firm name of J. Arthur Warner & Co. Defendant, J. Arthur Warner & Co., Inc., is a New York corporation which on May 31, 1946 succeeded to the business of the aforesaid partnership. Defendant Donald F. Thayer until about May 31, 1946 was an employee of the partnership, and thereafter was an employee of the successor corporation; in both employments his duties were those of a salesman and solicitor of business and accounts.

3. In the first count of the complaint the plaintiff relying upon § 17 of the Securities Act of 1933, §§ 10(b) and 15 (c) of the Securities Exchange Act of 1934 and rules and regulations thereunder, asserts that the defendants, by use of the mails and of interstate commerce, employed manipulative, deceptive, and fraudulent devices from July 1943 to August 1945 by which plaintiff was damaged. The gist of this count is the allegation that defendants induced the plaintiff to believe that they would act in her best interests in investing her money, and that she could trust their recommendations; that she did rely on these representations, turned money and securities over to the defendants, and they for their gain and contrary to her interest, and without her knowledge, "churned" her accounts. The term "churned" is defined in the complaint to mean "engaged in transactions of purchase and sale of securities which were excessive in size and frequency in view of the financial resources and character of the plaintiff's accounts." After referring to the amounts which the plaintiff says she turned over, and the profits she says the defendants realized, the plaintiff says that she did not discover the aforesaid fraudulent practices until May 1952 about three months before she filed her complaint.

4. Plaintiff's second cause of action refers to the same statutory sections and to some additional implementing regulations. In particular reliance is placed on Rule X–15C1–4 rather than to Rule X–15C1–7(a) of the regulations adopted by the SEC under the 1934 Act. In this count the particular wrongful conduct with which the defendants are charged is that in connection with the same account of the plaintiff they "purchased securities on the plaintiff's behalf and charged the plaintiff prices well in excess of the current market for such securities and prices not reasonably related to the current market for said securities, and retained for themselves excessive commissions and 'mark-ups'", and failed to disclose to * * * the plaintiff that said sales had been so made. Again the allegations are that plaintiff sustained losses as a result of these asserted wrongs.

5. The third cause of action does not name Thayer as a defendant, but is confined to James Arthur Warner and J. Arthur Warner & Co., Inc. In this count the allegation is that the defendants agreed that they would invest the plaintiff's money, and they would comply with all of the provisions of and regulations issued under the Securities Act of 1933 and of the Securities and Exchange Act of 1934; that the defendants Warner individually and the corporation broke this agreement, and by this breach damaged the plaintiff.

6. The fourth cause of action, again limited to defendants Warner and J. Arthur Warner & Co., Inc., asserts that there were breaches of a relation of trust between plaintiff and those defendants which damaged the plaintiff.

7. Upon the trial it appeared that before any of the transactions which were involved took place defendant J. Arthur Warner and one Joseph H. Young, now deceased, had become equal co-partners doing business under the firm name of J. Arthur Warner & Co. The partnership was a duly registered broker-dealer in securities. It ceased to do business May 31, 1946, and shortly thereafter was dissolved.

On June 1, 1946 there was registered as a broker-dealer in securities a New York corporation, J. Arthur Warner & Co., Inc. of which the principal stockholders were Warner and his wife.

8. Shortly before May 31, 1946 the partnership sent a communication to each of its customers, including the plaintiff, advising them it was going out of business as a dealer-broker, and that the corporation was going into such business, and enclosing a printed communication instructing the partnership to transfer such customer's account to the corporation as such account stood upon the books of the partnership, together with a further communication directing and au-

thorizing the corporation to receive the customer's account as it stood upon the books of the partnership, and confirming that all contractual arrangements between the customer and the partnership in respect of such account would remain in effect and inure to the benefit of the corporation. Both of such communications were duly executed by plaintiff.

9. Except as indicated in the preceding paragraph, there was no agreement under which the corporation assumed obligations of the partnership. Both the partnership and the corporation were members of the National Association of Securities Dealers, Inc., but neither of them was ever a member of a national securities exchange. Whenever a firm which is not a member of a national exchange buys or sells a security on such exchange, for its own account or that of a customer, it must do so through a member firm, and pay to such member firm the full stock exchange commission.

10. Defendant Thayer, though he filed an answer, did not appear at the trial. He was a salesman, first for the partnership, and then for the corporation. Both the partnership and the corporation had specifically instructed Thayer that he was not to receive or accept any discretionary power from any customer. Like instructions had been given to all other salesmen.

11. Plaintiff at the time of this action was a housewife. She and her husband were married in 1939. She is a high school graduate who after graduating worked in a bank in Evanston, Illinois for nine months, and then for twelve years for the Atlantic National Bank of Boston, and its successor, the First National Bank of Boston. Her husband was an accountant employed by the Comptroller of the Commonwealth of Massachusetts. Thayer was a friend and neighbor of the plaintiff, visiting her almost daily beginning in 1943.

12. On July 8, 1943 Thayer told the plaintiff that the partnership was a reputable concern, doing business in several large cities throughout the country, and that it had a research and statistical department. He said that if she cared to give him a list of her securities, he would turn the list over to the research and statisical department to see what could be done to better her position. Thayer said he himself had been successful in his securities transactions, and that if she did business with him as a salesman, "he wouldn't do anything different * * * than he would for a member of his family." (Tr. 27)

13. Thereafter plaintiff gave Thayer a list of her securities. Then Thayer procured from the research and statistical department a report on that list. He suggested that plaintiff's investments were conservative, and that there were other securities which would give "a faster turn-over." For example, he suggested the sale of American Telephone and Telegraph Company stock and United Fruit Company stock.

14. On July 8, 1943 the plaintiff opened a securities account with the partnership, and turned her securities over to them. Her account remained with the partnership until May 31, 1946, and having been transferred to the corporation, remained with it from then until October 7, 1946. During the entire period of the plaintiff's account with the partnership all but nine transactions in the plaintiff's account were on an agency basis.

15. Unknown to the partnership or to the corporation, and contrary to their specific instructions to him, Thayer accepted from the plaintiff oral authority to purchase and sell securities in her account without first consulting with her or securing her prior directions therefor.

16. The plaintiff never notified the partnership or the corporation that she had given to Thayer the aforesaid authority. Neither the partnership nor the corporation knew, nor from the form or substance of the transactions carried on in the plaintiff's name could have known by reasonable and diligent inquiry, that Thayer was acting in this manner for the plaintiff. Indeed, as the

subsequent findings indicate the form and substance of the transactions between the plaintiff and the partnership and the corporation were such as to lead the partnership and the corporation to suppose that all transactions were initially directed by the plaintiff, and were not taken at the initiative of one of their salesmen operating under a discretionary power.

17. On the day that each transaction occurred, the partnership or the corporation, as the case might be, sent to the plaintiff a confirmation in writing. In the case of agency transactions each such confirmation set forth, among other things, (a) the date of the transaction, (b) the name of the security involved, (c) the number of shares of stock or face value of bonds, (d) whether the securities were bought or sold, (e) the price at which the order was executed, (f) the execution amount (the price times the number of units bought or sold), (g) the Federal and State transfer tax, (h) the stock exchange commission, if any, in dollars, (i) the commission of the partnership or corporation in terms of points and the legend "a point represents one dollar per share or ten dollars per $1,000 par value of bonds; fractions of a point are pro rata", (j) the net amount credited or charged to such plaintiff's account. Each such confirmation was received in the regular course of the mails by the plaintiff, was examined by her, and was well within her capacity to understand, particularly taking into account her education and experience.

18. In addition to the confirmations, at the end of each month in which any transaction took place the partnership or the corporation, as the case might be, sent to the plaintiff a monthly statement of account which set forth every transaction during the preceding month, and showed the daily balance on the day the transaction occurred.

19. Plaintiff received through the mails regularly each such monthly statement, examined it, and was fully capable of understanding it.

20. The plaintiff by virtue of the confirmation slips knew within a day or so each detail of each transaction in her account. She never asked for any further information with respect to such transactions. The only reasonable inference is that she fully understood them.

21. The majority of the transactions in the plaintiff's account were specifically authorized by her prior to their consummation. In approximately one-third of the transactions, Thayer directed the execution without first consulting her, but immediately thereafter did consult her and in every case secured her approval or acquiescence.

22. The commissions charged by the partnership and the corporation in respect of the agency transactions, and the mark-ups or discounts charged in respect of principal transactions, were not shown to be exorbitant, unfair, unreasonable, or out of line with those prevailing in the trade. There is no evidence that Thayer, the partnership, or the corporation made any false representation with respect to any of the securities bought or sold in the plaintiff's account.

23. The detailed list of the transactions of the plaintiff with the partnership and the corporation are set forth in schedules upon which the parties have agreed, and which are incorporated by reference.

24. Upon the basis of the foregoing findings of fact, there is no evidence of any breach of duty either at common law or under any statute on the part of J. Arthur Warner, individually, or J. Arthur Warner & Co., Inc. Neither of them knew, or could have known of, a discretionary power granted by the plaintiff. Thayer in his capacity as salesman for the partnership and the corporation made no representations which were shown to be false or which were relied upon to the detriment of the plaintiff. Neither the partnership nor the corporation having made any unreasonable nor unusual profit in handling the plaintiff's account, neither of them failed in any

duty imposed upon them as brokers, fiduciaries, principals, or otherwise. Even if there had been a breach of duty, which there was not, plaintiff by repeatedly accepting confirmations and accounts, which fully disclosed all aspects of the transactions, elected not to rely upon that breach. Moreover, by failing seasonably to make complaints of facts of which she was informed, she would in any event be barred from her late assertion of wrong done unto her by the partnership or corporation.

25. So far as concerns Thayer, the Court does not believe that he made any misrepresentation of fact or of opinion, or otherwise, as to the quality of any security or the nature of any security transaction. If any representation were made, the Court does not believe that the plaintiff in view of her experience, education, and constant inspection of accounts relied upon that representation. In so far as there is some complaint that Thayer exercised a discretionary power to engage in excessive number of transactions for the account of the plaintiff, the Court, without deciding whether as a result of statute, regulation, or common law, there is a duty upon a salesman acting solely at the request of a customer (and without the knowledge of the salesman's normal employer) to refrain from excessive transactions, nonetheless determines that upon the basis of the evidence in this case, the plaintiff cannot recover on that theory of churning. Plaintiff was fully apprised of the number and frequency of the transactions. She was fully competent to exercise a judgment as to whether such a large number of transactions were in her interest. She not only refrained from protesting, she in fact by repeated silences under the most frequent reminders in writing as to the state of her accounts, fully acquiesced in what Thayer had done for her.

With respect to each defendant and with respect to each count in which a defendant is named, judgment is to enter for that defendant with costs.