Dennis H. NASH, Sr., et al.

v.

J. ARTHUR WARNER & CO., Inc., et al.

Civ. A. Nos. 52–1, 52–2, 52–3, 52–4.

United States District Court
D. Massachusetts.

Dec. 30, 1955.

**616**

Harry Finn, Finn & Crane, Boston, Mass., for plaintiffs.

Spencer Pinkham, New York City, Joseph J. Gottlieb, Edward F. McLaughlin, Jr., Boston, Mass., for defendants.

WYZANSKI, District Judge.

1. These are four related actions, filed January 17, 1952. Like Carr v. Warner, D.C., 137 F.Supp. 611 (to which reference will be made from time to time hereafter) each of these actions is alleged to be based upon § 17 of the Securities Act of 1933, 15 U.S.C.A. § 77q, §§ 10(b) and 15(c) of the Securities Exchange Act of 1934, 15 U.S.C.A. §§ 78j (b), 78o(c), and rules and regulations of the SEC adopted thereunder, and each of them, in general, follows the pattern of the complaint in the Carr case. Jurisdiction to hear this controversy likewise

is asserted to rest upon 15 U.S.C.A. § 78aa.

2. Here as in the Carr case the defendants include J. Arthur Warner & Co., Inc. and J. Arthur Warner individually. The relationship of Warner and the partnership of which he was a member, and the corporation of which he was a stockholder are set forth in that opinion and need not here be repeated. Defendant William V. Barnstone in the four cases now under consideration occupied a position precisely analogous to that which Thayer occupied in the Carr case,—in short, he was a salesman, first for the partnership, and later for the corporation. He had been specifically directed not to take any discretionary power from any customer; and if any of the four plaintiffs in these four actions did give him such power under any circumstances, neither the partnership nor the corporation knew or reasonably could have known that such authority had been orally given to one of their salesmen by one of their customers. That is, the situation was one where none of the written records of the corporation or the partnership either showed, or gave rise to inference from which a reasonable person would conclude, that any of the four plaintiffs here involved had vested discretionary power in Barnstone.

3. Although Barnstone was named as a defendant in these four actions, he is now dead. No representative of his estate has been substituted as a defendant. As against Barnstone, judgment cannot be entered regardless of the merits of the controversy. Hence the actions of the plaintiffs with respect to Barnstone are dismissed with costs.

4. The four plaintiffs in these four suits may be briefly described individually.

5. John P. Nash, who died a resident of New Hampshire in 1951, is here represented by his executor, Francis B. Nash. John owned and operated a successful plumbing contracting business in Nashua, New Hampshire. Though he had little formal education, he had, prior to

meeting Barnstone, bought and sold securities through a stockbroker, had borrowed money from a bank, and had pledged securities as collateral for a bank loan.

6. Francis B. Nash, a brother of John, had attended public school to the sixth grade. He is an electrician who did electrical work in connection with the installation of oil burners, and did other work for his brother John. His capacity to understand accounts is shown by the detailed records which he kept in his own books and by his preparation of income tax returns for himself and other members of the family. These records and returns comprised detailed information of exactly the type requisite for proper accounting under the federal tax laws. Moreover, Francis kept virtually daily contact with the newspaper reports of the prices of securities.

7. Margaret B. Nash, the sister of John and Francis, left her affairs entirely to her two brothers, John and Francis, to be managed. She relied exclusively on them.

8. Dennis H. Nash, Sr., now dead and represented by his executor, Francis B. Nash, was the father of John, Francis, and Margaret. He was a day laborer. He relied exclusively upon his sons for advice in the management of his investments, and he and they commonly acted in concert, each fully disclosing his situation to the other.

9. In 1942 Barnstone called upon the Nashes at their home and from 1943 until February 1949 called upon them two or three times a month. He represented himself as a salesman for J. Arthur Warner & Co., asserted that he was selling, or perhaps more correctly acting as agent for the sale of, railroad bonds. He also said on later occasions that he acted as a salesman with respect to stocks. After some other visits, and about March 1943, Barnstone persuaded some members of the Nash family to invest some money in stocks. According to the recollection of Francis B. Nash, Barnstone said "he was going to make a lot of money for me and everything would be wonderful if I would give him some money, etc. to buy some stock from him." In so far as it is a question of fact, the Court concludes that Francis Nash's recollection of this conference is not precisely accurate, and that it is much more probable than not that Barnstone merely suggested that if the Nash family bought their securities through him as a salesman of J. Arthur Warner & Co., they would be likely to make money. Moreover, in so far as it is a question of fact, the Court concludes that these statements were not regarded by any member of the Nash family, nor relied upon by any member of the Nash family, as a representation of fact or opinion. The Nashes, as a hard-headed, by no means financially unsuccessful family, were in no way misled by Barnstone's talk.

10. In March 1943 Dennis, John, Francis, and Margaret each opened a securities account with the partnership. In April 1946 Dennis and Margaret opened a joint account with the partnership. On June 1, 1946 each member of the Nash family executed form communications (similar to those described in the Carr case) transferring his or her account from the partnership to the corporation.

11. Sometime during the year 1945 John, Francis, and Margaret, using securities owned by them as collateral, borrowed money from various commercial banks in order that they might be able to buy more securities. Thereafter when any of them bought a security through the partnership or corporation, the latter delivered it to the buyer or to the bank for collateral. In engaging in these rather complicated transactions, the members of the Nash family showed that they were far from unsophisticated in stock transactions. They sought a multiplicity of purchases and sales. They, being fully competent, chose to proceed differently from a prudent businessman possessed of virtues endemic to the New England Community. Moreover, they indicated that far from being lured by some salesman they were motivated not by his rep-

resentation, but by their roseate expectations.

12. In making the preceding finding, the Court is not unaware that the plaintiffs made the loans referred to through a note broker to whom they were introduced by Barnstone. But this introduction had no moral or legal significance. For prior to meeting Barnstone, John, through other intermediaries, had borrowed moneys from banks on securities then owned by him. Other members of the family were aware of these borrowings and their significance.

13. In the case of each transaction between each member of the Nash family and the partnership or the corporation, the partnership or corporation sent to the customer a written confirmation like the one described in the Carr case, and each customer received a monthly statement of account like that described in the Carr case. Each of the plaintiffs received in regular course through the mails these confirmations and monthly statements, examined them and, in the case of all except Margaret, understood them. Margaret relied exclusively upon her brothers for her understanding; and her brothers were capable of advising her properly, and did advise her.

14. Each member of the Nash family (except Margaret who relied upon her brothers) was aware of the extent of the transactions, and the type of risks involved in frequent security trading.

15. No written discretionary power was given by any member of the Nash family to Barnstone or any other representative of the partnership or corporation. Neither Barnstone nor anyone made any false representation regarding the quality of any security.

16. The commissions charged by the partnership and the corporation in respect to the agency transactions and the mark-ups or discounts charged in respect of principal transactions were not shown to be exorbitant, unfair, unreasonable, or out of line with those prevailing in the trade.

17. The detailed list of the transactions of the plaintiffs with the partnership and corporation are set forth in schedules upon which the parties have agreed, and which are incorporated by reference.

18. Upon the basis of the foregoing findings of fact, there is no evidence of any breach of duty either at common law, or under any statute on the part of J. Arthur Warner, individually, or J. Arthur Warner & Co., Inc. If any of the plaintiffs did grant a discretionary power, neither Warner nor the corporation knew or could have known of it. Barnstone, in his capacity as salesman for the partnership and the corporation, made no representations which were shown to be false, or which had been relied upon to the detriment of any of the plaintiffs. Neither the partnership nor the corporation has made any unreasonable or unusual profit in handling the account of any of the plaintiffs. Neither the partnership nor the corporation failed in any duty imposed upon them as brokers, fiduciaries, principals, or otherwise. Even if there had been a breach of duty, which there was not, each of the plaintiffs by repeatedly accepting confirmations and accounts which fully disclosed all aspects of the transactions, elected not to rely upon that breach. Moreover, by failing seasonably to make complaints of facts of which each of the plaintiffs was informed, each would, in any event, be barred from the late assertion of any wrong alleged to have been done by the partnership or corporation.

With respect to defendant Barnstone, the actions are dismissed on the ground that defendant is not alive and no substitution has been made. With respect to the other defendants and with respect to each count in each action, judgment to enter for that defendant with costs.