**David S. STEWART et al.**

**v.**

**Edward M. BENNETT et al.**

**Civ. A. No. 71–3022–T.**

United States District Court,
D. Massachusetts.

April 20, 1973.

Moulton, Looney, Mazzone, Falk & Markham, Stephen Moulton, Boston, Mass., Sherburne, Powers & Needham, Robert F. White, Boston, Mass., Hartley J. Chazen, New York City, co-counsel for Channing Securities, Inc., and D. S. Stewart.

Hemenway & Barnes, George H. Kidder, Boston, Mass., for Hunt.

Ropes & Gray, George H. Lewald, Boston, Mass., for Arthur Andersen & Co.

Hill & Barlow, John M. Kahn, Boston, Mass., for Edward M. Bennett and Joseph Spiegel.

Nutter, McClennen & Fish, Daniel J. Gleason, Boston, Mass., for Shields & Company, Incorporated (and the other underwriter defendants).

Philip D. Moran, Kane & Moran, Lynn, Mass., for Lloyd O. Ireland.

Louis Loss, Cambridge, Mass., for David R. Pokross and A. Warren Wilkinson.

David W. Walsh, Westwood, Mass., for James J. Cannon, Jr.

Joseph T. Fahy, Peabody, Brown Rowley & Storey, Cornelius J. Moynihan, Jr., Boston, Mass., for David R. Pokross and Warren Wilkinson.

## OPINION

TAURO, District Judge.

This is a securities action brought on behalf of a proposed class of purchasers of Viatron Computer Systems Corporation ("Viatron") debentures. The defendants are the officers and directors of Viatron at the time of the offering, the underwriters of the offering, and Viatron's accounting firm.

The two counts of the complaint allege identical misstatements and omissions in the registration statement and prospectus filed by Viatron on December 23, 1969, in connection with the public offering of $25 million in 6¼% convertible subordinated debentures.

The first count is based on § 11 of the Securities Act of 1933, 15 U.S.C. § 77k (hereinafter referred to as "Section 11"), and the second count is based on § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5 promulgated thereunder (hereinafter referred to as "10b–5").

All defendants have moved to dismiss the second count of the complaint, arguing that a buyer of a registered security —whom Congress specially favored in Section 11 with an express, but carefully circumscribed, right of action—should

not be permitted to make an "end run" around Section 11 by utilizing the relatively unstructured provisions of 10b–5. In focusing on defendants' position, we take the liberty of adapting a recent admonition of Judge Aldrich: There is nothing wrong with an end run. The question must be whether in doing so the plaintiff went offside. Wilbur v. Mullaney, 473 F.2d 943 (1st Cir. 1973).

The precise issue presented is one of first impression in this Circuit.[1] As shall appear later, it would be a matter of understatement to point out that there is a split of authority among the courts and legal writers who have considered the subject. Upon analysis of the statutes themselves, their legislative history and the numerous and seemingly inconsistent interpretations to which they have been subjected, this court is persuaded that in order for a buyer of registered securities to have a 10b–5 claim, he must sustain the burden of alleging and proving fraud. Those buyers unable to sustain such a burden have been provided a full and complete remedy under Section 11.

Section 11 of the 1933 Act expressly imposes civil liability for untrue or misleading information in a registration statement. Any person acquiring a security issued in violation of Section 11 is granted the right to sue, without any privity limitations, the issuer, as well as its directors, underwriters, and accountants who participated in the preparation of the registration statement.

To balance somewhat this wide angle aperture available to buyers, Congress elaborately detailed the conditions and circumstances under which this full menu of corporate targets would be available to unhappy buyers. Under the terms of Section 11, buyers must be prepared to meet affirmations of defendants that they had reasonable ground to believe the statements in issue were true,[2] and that plaintiff knew of the alleged untruth or omission.[3] In addition, the plaintiff must prove reliance on the alleged misrepresentation if he acquired the security after the issuer had made generally available an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement.[4] Further, the buyer is limited to recovery within a detailed measure-of-damages formula,[5] and must face the possibility of a court assessing costs of suit, including reasonable attorneys fees, and, perhaps, requiring that a buyer give an advance undertaking for the payment of such costs.[6] Finally, he must file suit within a limitation period of one year.[7]

In sharp contrast to the tightly tailored Section 11, Section 10(b) of the 1934 Act is a broad, nine-line anti-fraud provision whose prescriptions and proscriptions must truly be said to be in the eyes of the beholder.[8]

There is no indication that the intent of Congress in passing § 10(b) was to create a new private right of action. 1 Bromberg, Securities Law: Fraud (hereinafter referred to as "Bromberg") § 2.2(333). Moreover, it seems clear that Rule 10b–5, adopted by the Securities Exchange Commission on May 21, 1942, was an effort to fill a gap in its own arsenal of anti-fraud weapons by

---

1. A recent unreported decision, Suez American Risk Capital Fund, S.A. v. Estabrook & Co., Civ. No. 71–1566–G (D.Mass. August 11, 1972), involving buyers of unregistered securities, dealt with a similar question under § 12(2) of the 1933 Act.

2. § 11(b)(3); this defense is not available to the issuer.

3. § 11(a).

4. § 11(a).

5. § 11(e), 11(g).

6. § 11(e).

7. 15 U.S.C. § 77m.

8. § 10(b)'s somewhat broader version in the original 1934 bill was described as warning, "Thou shalt not devise any other cunning devices". Stock Exchange Regulation, Hearings before House Committee on Internal and Foreign Commerce, 73rd Cong., 2d Sess. (1934), at 115; see 3 Loss, Securities Regulation (hereinafter referred to as "Loss"), at 1424 n. 7.

providing a vehicle to be used against fraudulent purchasers as opposed to sellers. 1 Bromberg § 2.2(420). There could be no clearer legislative history than the Commission's own comment at the time Rule 10b–5 was launched that "the new rule closes a loophole in the protections against fraud . . . by prohibiting individuals or companies from *buying* securities if they engage in fraud in their purchase." SEC Sec. Exch. Act Rel. No. 3230 (May 21, 1942) (emphasis added).

Manifestly, in promulgating Rule 10b–5 the SEC was not trying to protect buyers, whom it regarded as already adequately sheltered. See 1 Bromberg § 2.2(420). Rather, 10b–5 was formulated for the protection of sellers. Cady, Roberts & Co., 40 S.E.C. 907, 913 (1961); Birnbaum v. Newport Steel Corp., 193 F.2d 461, 463 (2d Cir. 1952), cert. denied 343 U.S. 956, 72 S.Ct. 1051, 96 L. Ed. 1356.

Notwithstanding the lack of any manifest Congressional intent, the broad and unbridled provisions of 10b–5 [9] inevitably led to its ancillary development as a private cause of action. It is now settled case law that there is an implied right of civil recovery for a violation of 10b–5.[10]

In the pioneer decision recognizing an implied private 10b–5 cause of action, Kardon v. National Gypsum Co., 69 F. Supp. 512 (E.D.Pa.1946), a seller's action, Judge Kirkpatrick reasoned that since "the disregard of the command of a statute is a wrongful act and a tort", 69 F.Supp., at 513, and the general purpose of the 1934 Act was to protect investors from manipulative or deceptive devices, the deceived sellers before him must be permitted to sue for a violation of Rule 10b–5.

Sellers, who were otherwise without an effective federal remedy,[11] were thus permitted to take private advantage of the rule formulated for their protection. As a result, while Congress had placed significant restrictions on rights of action granted the buyer in Section 11 and Section 12 of the 1933 Act, the seller, ignored for the most part by Congress, now found himself in the enviable situation of having the advantages of a federal action that was free of the obstacles of both common law deceit, and of substantial statutory burdens and defenses. See 3 Loss, at 1780; 6 Loss, at 3907.

9. The language of 10b–5 requires the plaintiff to prove: 1) fraud or material misstatement in connection with the purchase or sale of a security, and 2) use of the mails or some interstate or stock exchange facility. Unlike Section 11 and Section 12(2) of the 1933 Act, the Rule affords no defense on the grounds of plaintiff's knowledge or defendant's due care. A 10b–5 plaintiff is not limited to a recision or statutory measure of damages. And 10b–5 has no provision under which a plaintiff may be required to post security for costs or pay defendant's counsel fees. See 3 Loss, at 1779–80.

It must be noted, however, that "various concepts have been utilized to limit liability under the sweeping language of the Rule, although none is specifically required by it." Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540, 543 (2d Cir. 1967). "[T]he courts seem to be importing into the rule modern theories of common law fraud and deceit . . . ." Jennings, "Insider Trading

in Corporate Securities: A Survey of Hazards and Disclosure Obligations Under Rule 10b–5," 62 N.W.U.L.Rev. 809, 814–15 (1968). See generally, 6 Loss, at 3875–3890.

10. See cases collected in 6 Loss, at 3871–73. The existence of a private 10b–5 remedy has been recognized by the First Circuit, Janigan v. Taylor, 344 F.2d 781 (1965), cert. denied, 382 U.S. 879, 86 S. Ct. 163, 15 L.Ed.2d 120, and the United States Supreme Court, Supt. of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971).

11. For a discussion of the relatively ineffective remedies available to sellers under §§ 9(e) and 18 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78i, 78r, see 3 Loss, at 1747–54; 6 Loss, at 3860–63; Note, "The Prospects for Rule X–10B–5: An Emerging Remedy for Defrauded Investors", 59 Yale Law Journal 1120, 1128–29 (1950).

The problem presented by the instant motion arose when buyers, although already expressly granted the right of civil recovery by Sections 11 and 12 of the 1933 Act, nonetheless claimed that the rationale of *Kardon, supra,* applied to them.

A choice of dilemmas was thus presented: Should buyers be permitted to sue under 10b–5, thus ignoring the Congressional restrictions written into buyer's actions in Sections 11 and 12. Or should the *Kardon* doctrine be restricted to seller's actions, thus treating the stepchild seller better than the favorite-son buyer, and thereby ignoring the plain language of Section 10(b) and Rule 10b–5 which makes no distinction between sellers and buyers. See 3 Loss, at 1780.

The first two courts to consider the matter refused to recognize a 10b–5 action for buyers, choosing instead the second dilemma by finding a distinction between buyers and sellers within the provisions of 10b–5. See Rosenberg v. Globe Aircraft Corp., 80 F.Supp. 123 (E.D.Pa.1948); Montague v. Electronic Corporation of America, 76 F.Supp. 933 (S.D.N.Y.1948).

In *Montague,* the plaintiff buyer, alleging untrue statements and omissions in the registration statement, filed a two count complaint, one under the Securities Act of 1933, the second under the Securities Exchange Act of 1934. Defendants moved for an order requiring plaintiff to furnish undertakings for costs under Section 11(e) of the Securities Act and Section 9(e) of the Securities Exchange Act. Plaintiff then amended his complaint to state a single cause of action under Rule 10b–5. Reasoning that since the complaint stated a good cause of action under Section 11 and that "Section 10(b) of the 1934 Act and Rule X–10b–5 were clearly not intended to supplant Section 11 of the 1933 Act," 76 F.Supp., at 936, the court held the action maintainable only under Section 11. The court cited the settled rule of statutory construction that, where there is both a specific provision providing a remedy in particular situations and a general provision that is broad enough to include these situations, the specific provision controls the general. Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa.1946), was distinguished as a seller's action.

Judge Kirkpatrick, author of the *Kardon* decision, reached the same result as *Montague.* In *Rosenberg,* a buyer, alleging misrepresentations in a registration statement and prospectus, sued under Rule 10b–5. The court, noting that the conduct complained of unquestionably constituted a violation of Section 11, held that the claim would be considered only under that section and not under 10b–5. With logic that is difficult to fault, Judge Kirkpatrick stated:

Assuming, without deciding, [that the registration statement and prospectus were manipulative or deceptive devices within the meaning of § 10(b) of the Act of 1934], they are nevertheless a special type of manipulative or deceptive device as to which the Act of 1933 in Secs. 11 and 12, 15 U.S.C.A. §§ 77k and 77*l*, has prescribed what amounts to a code of procedure . . . . It cannot be supposed that Congress intended to abolish these regulations and limitations when it enacted Sec. 10 of the Act of 1934. By any reasonable rule of statutory interpretation, it would require either an express repeal or an implication of repeal so strong as to be inescapable. The two Acts are unquestionably in pari materia and must be construed together to make a consistent whole. Looking at them as one statute it is simply not possible that Congress, having prescribed in elaborate detail procedural requirements which must be fulfilled in order to enforce civil liability attaching to a carefully defined type of violation, would have casually nullified them all in a later section. 80 F.Supp., at 124.

The position and analysis of *Rosenberg* and *Montague* are urged upon us by the defendants in the instant case.[12]

Though impressed with the reasoning of these decisions, the court is mindful of the considerable support for plaintiff's position, *i. e.*, that a buyer may sue under Rule 10b–5 as well as under Section 11, because Section 11 is not the exclusive remedy provided buyers by Congress. See cases collected in 1 Bromberg § 2.4(2) n. 76, and 6 Loss, at 3908–3910; *Wolfson v. Solomon*, 54 F. R.D. 584 (S.D.N.Y.1972); *Suez American Risk Capital Fund, S. A. v. Estabrook & Co.*, Civ. No. 71–1566–G (D. Mass. August 11, 1972); *Bisgeier v. Fotomat Corp.*, No. 71C1319 (N.D.Ill. February 3, 1972).[13]

The Ninth Circuit has held, *contra Rosenberg* and *Montague*, that Rule 10b–5 gives buyers a right of action in addition to, and free of the restrictions imposed by, Section 11 and Section 12 of the Securities Act of 1933. *Ellis v. Carter*, 291 F.2d 270 (1961); *Matheson v. Armbrust*, 284 F.2d 670 (1960), cert. denied 365 U.S. 870, 81 S.Ct. 904, 5 L. Ed.2d 860.

In *Ellis*, the court conceded that when read together, the 1933 Act and 1934 Act "present certain inescapable anomalies, no matter which of several alternative constructions are placed on section 10(b)." 291 F.2d, at 273. The court concluded that the most acceptable alternative was to permit buyers as well as sellers to sue under Section 10(b) and Rule 10b–5 without any distinction, free of the restrictions imposed in the 1933 Act. While admitting that this construction would at least imply that the procedural restrictions on a buyer's civil action which Congress carefully wrote into the 1933 Act were in effect nullified in 1934, the court rationalized its decision by saying:

It gives controlling weight to what seems to have been the dominant policy of Congress to provide complete and effective sanctions, public and private, with respect to the duties and obligations imposed under the two acts. It requires no variance in procedures under the 1934 act as between buyer and seller, no reason appearing why Congress would have wanted the procedures to be different. While it assumes that Congress in 1934 undid

12. Both of these cases antedate the judicial development of the private 10b–5 action. *Montague* is no longer of precedential value after the decision of the Second Circuit in *Fischman v. Raytheon Mfg. Co.*, 188 F.2d 783 (1951). In addition, two Southern District of New York decisions after *Montague* have failed to follow it. *Osborne v. Mallory*, 86 F.Supp. 869 (S.D.N.Y.1949); *Rosen v. Bergman*, 40 F.R.D. 19 (S.D.N.Y.1966). As Professor Loss notes, the decision in *Rosenberg* now stands alone for defendants' view. 6 Loss, at 3911. *Rosenberg* stands enfeebled as well as alone, since it has not been followed even in its own district, *Premier Industries, Inc. v. Delaware Valley Financial Corp.*, 185 F. Supp. 694 (E.D.Pa.1960), or elsewhere within the same circuit, *Dauphin Corp. v. Redwall Corp.*, 201 F.Supp. 466 (D.Del. 1962).

13. Defendants attempt to distinguish many of these cases on the ground that they deal with § 12(2) of the 1933 Act, 15 U.S.C. § 77*l*(2). The argument is that the "clash" of 10b–5 with § 11 is far greater than the "clash" of 10b–5 with § 12(2): § 11 "covers almost three pages in the statute book" (Defendants' Memorandum, at 17) and is "obviously the result of many compromises and much fine balancing of scales" (Defendants' Memorandum, at 20) while § 12(2) is "relatively short and simple" (Defendants' Memorandum, at 15). We find this distinction to be without merit. The fact is that the two chief restrictions in the buyer's action under § 11—security for costs and a short statute of limitation— are equally available under § 12(2). (The security for costs provision of § 11 (e) expressly applies to "any suit under this or any other section of this subchapter"; see also 1 Bromberg § 2.5(2), n. 108. The statute of limitations under § 77m applies to § 12(2) as well as § 11.) Similarly, the purchaser knowledge and due diligence defenses of § 11 are written into § 12(2) as well. We can see no basis, therefore, for defendants' contention that the restrictions of § 12(2) can be overridden by 10b–5, but those of § 11 cannot.

what it carefully did in 1933, it avoids judicial rewriting of the 1934 act to include procedural provisions which appear only in the 1933 act. As between two acts which deal with the problem, it permits the most recent enactment to govern. 291 F.2d, at 274.

And the court rejected the defendant's claim that a buyer permitted to sue under Rule 10b–5 should be required to prove "genuine fraud" as distinct from a mere misstatement or omission. 291 F.2d, at 274.

While sympathetic to the difficult choice facing the *Ellis* court, we cannot accept the view that Congress intended to allow, without limitation, buyers of registered securities to utilize 10b–5, thereby repealing by implication one short year after their passage, the carefully structured restrictions detailed in Section 11. Further, we take issue with *Ellis's* premise that there is "no reason appearing why Congress would have wanted the procedures to be different." 291 F.2d, at 274.

On the contrary, there is a very valid reason why Congress would set up differing standards and burdens in cases where fraud as opposed to negligence constitutes the gravamen of a buyer's complaint. Recognition of such distinction is consistent with both the pari materia theory of *Rosenberg, supra,* and the tort theory of implied private ac-

tions based on statutory violation. This distinction was recognized by the Second Circuit in Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2d Cir. 1951), in which Judge Frank reconciled Rule 10b–5 with Section 11 by permitting the buyer to sue under 10b–5 if he assumed the additional burden of alleging and proving the "fraud" that the court considered an ingredient of all actions under the Rule.[14] This middle-ground view has gained perhaps the widest following. See cases collected in 6 Loss, at 3908–10.

Faced with the question of whether and under what conditions an aggrieved buyer of securities may maintain an action under Rule 10b–5, when he also has available the express civil remedies of the 1933 Act, we answer: A buyer may sue under 10b–5 if the conduct complained of rises to the level of fraud,[15] and thus goes beyond the unintentional or negligent misrepresentation proscribed in Section 11 and Section 12(2).[16] As Judge Frank aptly put it:

A suit under § 11 of the 1933 Act requires no proof of fraud or deceit . . . . But proof of fraud is required in suits under § 10(b) of the 1934 Act and Rule X–10B–5, which was validly promulgated by the S.E.C. pursuant to that section. Congress reasonably, and without inconsistency, allowed suits of that sort which (1) are free of the restrictions applicable

14. It must be noted that the Second Circuit was faced with a defrauded buyer of an *unregistered* security, and thus one unable to sue under Section 11. See Wolfson v. Solomon, 54 F.R.D. 584, 588 (S.D.N.Y. 1972): "It is now clear that only persons who purchased securities that are the direct subject of the prospectus and registration statement may sue under Section 11." The court apparently overlooked § 12(2) as an available remedy for a buyer of unregistered securities. See 1 Bromberg § 2.4(2), text accompanying n. 84; 3 Loss, at 1783 n. 335. The erroneous assumption that the common stockholders had no express remedy under the 1933 Act does not, however, affect the Second Circuit's conclusion that a plaintiff in a 10b–5 action must allege and prove

"fraud." Trussell v. United Underwriters, Ltd., 228 F.Supp. 757, 765–766 (D.Colo.1964).

15. For an exhaustive survey of the definitions and interpretations that have been placed on the requirement of fraud and scienter in 10b–5 actions, see 2 Bromberg § 8.4(501)–(690).

16. It is clear that Section 11 dispenses with the element of scienter, and requires no proof of fraud or deceit. See 2 Bromberg § 8.4(320). Similarly, under Section 12(2), scienter is not an element of plaintiff's suit, and the section imposes liability for negligent as well as intentional misrepresentation. See 2 Bromberg § 8.4(311).

to a suit under § 11 of the 1933 Act and (2) which are not confined to those persons who may properly sue under that section but which include all who are the victims of the fraud. We think that when, to conduct actionable under § 11 of the 1933 Act, there is added the ingredient of fraud, then that conduct becomes actionable under § 10(b) of the 1934 Act and the Rule, at the suit of any defrauded person, whether or not he could maintain a suit under § 11 of the 1933 Act. Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 786–787 (2d Cir. 1951) (footnotes omitted).

The concept of fraud is expressly written into both § 10(b) and Rule 10b–5. Section 10(b) speaks in terms of "any manipulative or deceptive device or contrivance." Rule 10b–5, described at its inception by the S.E.C. as a rule that "prohibits fraud", 8 S.E.C. Ann.Rep. 10 (1942), proscribes "any device, scheme, or artifice to defraud", 10b–5(1) and "any act, practice, or course of business which operates as a fraud or deceit upon any person", 10b–5(3).[17]

■ The language and intent of Rule 10b–5 require a plaintiff to allege and prove conduct which, at the very least, is either knowing or intentional. Trussell v. United Underwriters, Ltd., 228 F. Supp. 757, 772 (D.Colo.1964).[18]

■ In partially rejecting the statutory analysis of Montague v. Electronic Corporation of America, 76 F.Supp. 933 (S.D.N.Y.1948) and Rosenberg v. Globe Aircraft, 80 F.Supp. 123 (E.D.Pa.1948), the court has in mind the admonition of Judge Kaufman that the securities laws are not to be analyzed by "Congressional mindreading"; the critical question is whether the right of action asserted is necessary for the effective enforcement of the Act. Globus v. Law Research Service, Inc., 418 F.2d 1276, 1284 (2d Cir. 1969), cert. denied 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.3d 93. The securities laws have always been construed very broadly to promote the remedial purposes behind them. S.E.C. v. United Financial Group, Inc., 474 F.2d 354 (9th Cir. 1973).[19]

17. Although the language of 10b–5(2) (referring merely to material misstatements and half-truths) expresses no element of fraud or scienter, there is serious doubt as to whether this clause is a permissible implementation of Section 10(b), which speaks of "any manipulative or deceptive device or contrivance"; without the element of scienter, Rule 10b–5(2) may exceed the bounds of its authorizing statute, and thus be invalid. 3 Loss, at 1442 n. 45; 6 Loss, at 3884–85. As a result, a number of courts have required some showing of fraud in 10b–5(2) actions. See cases and cases contra collected in 6 Loss, at 3884–88, and 1 Bromberg § 2.6(1), n. 135 and 1971 Supp.

18. For cases in this district and circuit, see Bowman & Bourdon, Inc., v. Rohr, 296 F.Supp. 847, 852 (D.Mass.1969), affm'd per curiam 417 F.2d 780 (1st Cir. 1969), in which Judge Ford noted that defendant "knowingly" made increases in unit cost of inventory and "certainly knew" that they would result in apparent increase in operating profits in the financial statements; Janigan v. Taylor, 212 F.Supp. 794, 799 (D.Mass.1962),

remanded for modification on other grounds, 344 F.2d 781, 784 (1st Cir. 1965), cert. denied 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120, in which the trial court gave judgment for plaintiff on the finding that defendant "had knowledge of and wilfully failed to disclose" material facts, and the court of appeals described defendant's statement as "consciously" false; Carr v. Warner, 137 F.Supp. 611, 613 (D.Mass.1955), and Nash v. J. Arthur Warner & Co., 137 F.Supp. 615, 618 (D.Mass.1955), in which Judge Wyzanski found for defendants where they neither knew, nor by reasonable conduct should have known, of the material facts, thus implying that either actual or constructive knowledge is necessary. For decisions requiring scienter in other circuits, see cases collected in 6 Loss, at 3884–88, and 2 Bromberg § 8.4(501)–(690).

19. See also Affiliated Ute Citizens v. United States, 406 U.S. 128, 151, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972):

The Court has said that the 1934 Act and its companion legislative enactments embrace a "fundamental purpose

Private actions for violations of the securities laws "provides a necessary supplement to Commission action." J. I. Case Co. v. Borak, 377 U.S. 426, 432, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964). In upholding the availability of a private right of action under Rule 10b–5, the Court of Appeals for the Ninth Circuit wrote: "We can think of nothing that would . . . more certainly tend to deter fraudulent practices in securities transactions and thus make the Act more 'reasonably complete and effective' than the right of defrauded buyers or sellers of securities to seek redress in damages in federal courts." Fratt v. Robinson, 203 F.2d 627, 632 (9th Cir. 1953).

■ The approach we have adopted is "an analysis which reconciles the operation of both statutory schemes with one another rather than holding one completely ousted." Silver v. New York Stock Exchange, 373 U.S. 341, 357, 83 S.Ct. 1246, 1257, 10 L.Ed.2d 389 (1963).

Section 11 of the 1933 Act proscribes innocent or negligent misstatements. Section 10(b) and Rule 10b–5 proscribe more serious misconduct, fraud. Actions under 10b–5 are free of Section 11 restrictions, and it makes sense that they would be, the plaintiffs having taken on the heavier burden of establishing fraud.

■ We hold that a purchaser of securities in an allegedly fraudulent transaction may proceed under 10b–5 even though he might also have a Section 11 remedy available to him.

■ Plaintiffs' complaint fails to allege fraud,[20] and, therefore, does not state a claim under Section 10(b) and Rule 10b–5. Plaintiffs are given thirty (30) days in which to amend their complaint so as to state a cause of action under 10b–5. Failing the filing of sufficient allegations within that period, the second count of the complaint will be dismissed.

. . . to substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry." SEC v. Capital Gains Research Bureau, 375 U.S. 180, 186, 84 S.Ct. 275, 280, 11 L.Ed.2d 237 (1963). In the case just cited the Court noted that Congress intended securities legislation enacted for the purpose of avoiding frauds to be construed "not technically and restrictively, but flexibly to effectuate its remedial purposes." *Id.*, at 195, 84 S.Ct. at 285. This was recently said once again in Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971). (footnote omitted)

20. ¶ 21 of the second count reads as follows:

The plaintiff is informed and believes that the prospectus and the registration statement of which it was a part constituted a device, scheme or artifice to defraud or contained untrue statements of fact or omissions to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or constituted an act, practice, or course of business which operated as a fraud or deceit upon the plaintiffs and each member of the plaintiff class and that the defendants, and each of them, knew or should have known of the untrue statements in said registration statement and prospectus.

The charge that defendants merely "knew or should have known of the untrue statements" lacks the critical element of scienter, and can be read as charging defendants with mere negligence.

Further, "the circumstances constituting fraud . . . shall be stated with particularity." Fed.R.Civ.Pro. 9(b); see Segal v. Gordon, 467 F.2d 602 (2d Cir. 1972).