Wilhelm RINDNER & Eva RINDNER
vs.
STOCKCROSS, INC.

Civ. A. No. 79-1892-Z

United States District Court
D. Massachusetts

January 23, 1981

plaintiff.
defendant.

## MEMORANDUM OF DECISION

ZOBEL, D.J. Plaintiffs Wilhelm and Eva Rindner seek to recover alleged losses resulting from their investment in certain securities accounts. The defendant Stock-cross, Inc. is a brokerage house organized under the laws of Massachusetts with its principal place of business in Boston, Massachusetts.

The Rindners invoke the jurisdiction of this Court pursuant to Section 22 of the Securities Act of 1933, 15 U.S.C. §77v; Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. §78aa; Section 214 of the Investment Advisors Act of 1940, 15 U.S.C. §80b-14; and the doctrine of pendent jurisdiction. Defendant has moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint. For the reasons stated below the motion is granted.

### Allegations

Plaintiffs allege that in 1976 after comparing commissions charged by defendants and other broker-dealers, plaintiffs opened an account with defendant for the conduct of securities transactions. During the years 1976 and 1977 plaintiffs allege that they requested that defendant purchase and sell certain stocks for them and placed a few orders for the purchase of stock options. In 1977 and 1978 at defendant's encouragement they directed defendant to purchase and sell numerous stock options the number and type of which were inappropriate for persons of their financial means, emotional state and experience. Plaintiffs claim that in September 1978, acting on defendant's recommendations, they requested that defendant purchase certain "deep-in-the money" options. However, defendant allegedly failed to disclose to plaintiffs that there was almost no market for such options and that the value of the options did not equal the value of the underlying securities at the time of the closing. Plaintiffs claim that defendant or its employees failed to advise plaintiffs that certain transactions were not in their interest nor that they would place plaintiffs in conflicting positions concerning stock options which plaintiffs had already purchased. In addition, defendant allegedly failed to advise plaintiffs of margin and credit requirements until after margin trades had been executed, causing plaintiffs to have to sell or liquidate investments or enter into additional trans-

actions at times and under circumstances which caused them additional losses.

At all times relevant hereto plaintiffs allege that they were under the care and treatment of psychiatrists for severe emotional strain and depended upon the approximately $400,000 which they had received through inheritance to support themselves. They claim that their psychological condition rendered them unemployable and unable to understand the nature of the transactions which they engaged in through the defendants. While plaintiffs allege that neither defendant nor any of its employees requested any financial or personal information from them, they claim that their psychological and financial condition should have been obvious to defendant and its employees or agents.

As a result of the encouragement of defendant and its employees to invest in stock options and defendant's failure to supervise their account, plaintiffs allege losses in excess of $190,000 in 1978 and commissions to defendant totalling $56,694.21 in that year, in addition to psychological and emotional damage.

## I. Section 12 of the Securities Act of 1933 (15 U.S.C. §771):

Plaintiffs purport to state a claim under Section 12(2) of the 1933 Act, 15 U.S.C. §771(2), which provides:

Any person who . . . (2) offers or sells a security . . . by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a[n] . . . oral communication in interstate commerce or of the mails, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading . . . and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known of such untruth or omission, shall be liable to the person purchasing such security from him.

The general rule is that liability under Section 12(2) is limited to the plaintiff's immediate seller, or to those who have actively participated in the sale either as an aider and abettor or as a co-conspirator. **Lorber v. Beebe**, 407 F.Supp. 279 (S.D. N.Y. 1975). Occasionally liability has attached under this section to a broker who was acting as agent for **both** buyer and seller in the transaction. See, **Cady v. Murphy**, 113 F.2d 988 (1st Cir. 1940), **cert. denied**, 311 U.S. 705 (1940). However, in no case has liability attached under this section to one acting solely as the buyer's agent in securities transactions.

The fundamental principles regarding the existence of a principal-agent relationship are as follows:

Agency is ordinarily a relation created by agreement of the parties, and, as between principal and agent, an agency is created and authority is actually conferred very much as a contract is made, to the extent that the creation results from the agreement between the principal and agent that such a relation shall exist. As between the parties to the relation, there must be a meeting of the minds in establishing the agency, and the consent of both the principal and the agent is necessary to create the agency, although such consent may be implied rather than expressed. The principal must intend that the agent shall act for him, the agent must intend to accept the authority and act on it, and the intention of the parties must find expression either in words or conduct between them.

3Am.Jur.2d, **Agency**, §17 at 428.

Viewing the instant complaint most favorably to the plaintiff, as I must on a motion of this kind, I conclude that plaintiffs have failed to state a claim for relief under Section 12(2). In each instance of alleged misconduct on the part of defendant, the complaint states that defendant acted at the request and direction of the plaintiffs. Thus the complaint alleges a classic principal/agent relationship between plaintiffs and defendant and is insufficient as a matter of law. Consequently plaintiffs' claim under Section 12(2) of the Securities Act of 1933 is dismissed.

## II. Section 17(a) of the Securities Act of 1933; Section 10(b) and Section 15(c) of the Securities Act of 1934:

Section 17(a) of the Securities Act of 1933, 15 U.S.C. §77q, creates criminal liability for any person who in the sale of securities in interstate commerce attempts to defraud the purchaser through the use of any scheme or artifice or by means of a material misstatement or omission.* While the statute provides for no private cause of action, such an action could be implied based upon "the general principle of tort law that violation of a provision of a criminal statute can, unless expressly or impliedly negatived by the statute itself, give rise to a civil remedy in tort." **Trussell v. United Underwriters, Ltd.,** 228 F.Supp. 757, 765 (D. Colo. 1964). The Supreme Court has not yet decided nor has the Court of Appeals for this Circuit ruled on this question. However, given the extensive remedies provided by § § 11 and 12 of the Act it is unlikely that Congress intended such a private right of action to exist. **Dyer v. Eastern Trust and Banking Co.,** 336 F.Supp. 890 (D.Me. 1971).

Assuming however for the purposes of this motion that an implied private right of action does exist for violation of § 17(a), plaintiffs have failed to state a claim under this section as well as § § 10(b) and 15(c) of the Securities Acts of 1934. An alleged violation of the antifraud provisions of the securities acts requires an allegation of scienter. **Ernst & Ernst v. Hochfelder,** 425 U.S. 185 (1976); **Stewart v. Bennett,** 359 F.Supp. 878 (D. Mass. 1973), **supp. op.,** 362 F.Supp. 605 (D. Mass. 1973); **Jackson v. Oppenheim,** 411 F.Supp. 659 (S.D.N.Y. 1974), **modified,** 533 F.2d 826 (2d Cir. 1976); **Hornblower & Weeks-Hemphill, Noyes v. Burchfield,** 366 F.Supp. 1364 (S.D.N.Y. 1973). The complaint does not allege any facts tending to establish scienter, intent to defraud, reckless disregard for the truth, or knowing use of any device, scheme, or artifice to defraud. Rule 9(b) of the Federal Rules of Civil Procedure requires that in all averments of fraud the circumstances constituting fraud be stated with particularity. In view of the absence of any such allegations, plaintiffs' claims under § 17(a) of the Securities Act and § § 10(b) and 15(c) of the Securities Exchange Act must be dismissed for insufficiency.

## III. Section 7 of the Securities Exchange Act of 1934:

Paragraph 17 of plaintiffs' complaint alleges that defendant failed to advise plaintiffs of margin and credit requirements until after margin trades had been executed, causing plaintiffs to have to sell or liquidate investments or enter into additional transactions at times and under circumstances which caused plaintiffs additional losses.

With this paragraph plaintiffs purport to state a claim under Section 7 of the Securities Exchange Act. That section proscribes an illegal extension of credit in margin transactions. Regulation T prescribes complex rules for the amount of margin initially required. Regulation T is violated when there is insufficient excess credit in an account to properly margin a particular transaction and the broker fails to receive an additional deposit or liquidate a sufficient number of securities to bring the margin up to the required level within a specified period of time. 12 C.F.R. § 220.3 (b), (e).

There are no allegations in plaintiffs' complaint that the amount of margin in plaintiffs' account fell below that required by Regulation T nor that defendant failed to liquidate plaintiffs' account promptly upon

---

*Section 17(a) of the Securities Act of 1933 (15 U.S.C. §77q) states:
  (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly —
    (1) to employ any device, scheme, or artifice to defraud, or
    (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
    (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

such an occurrence. Rather plaintiffs wish this Court to imply a violation of Regulation T and Section 7 for mere failure to disclose margin and credit requirements. However, plaintiffs can cite no law which holds that mere non-disclosure of margin requirements unaccompanied by an illegal extension of credit establishes a violation of Section 7 or Regulation T. I decline to draw such an inference. Such a claim is more properly made under the antifraud provisions of the securities laws. Hence defendant's motion to dismiss is granted with respect to this claim.

### IV. Churning Violations:

Plaintiffs' allegations that beginning in 1977 defendant by its employees and officers encouraged plaintiffs to place an ever-escalating number of orders for stock options through their margin account, the number and type of which was inappropriate for persons of the financial means, emotional state and experience of plaintiffs, are an attempt to allege a "churning" violation. Churning occurs when a dealer, acting in his own interests and against those of his customer, induces transactions in his customer's account that are excessive in size and frequency in light of the character of the account. **Kravitz v. Pressman, Frohlich & Frost**, 447 F.Supp. 203 (D.Mass. 1978). Churning has been held to state a cause of action under Section 10b of the Securities Exchange Act and Rule 10b-5. **Landry v. Hemphill, Noyes & Co.**, 473 F.2d 365 (1st Cir. 1973), cert. denied, 414 U.S. 1002 (1973), as well as under Section 17(a) of the Securities Act. **Hecht v. Harris Upham & Co.**, 430 F.2d 1202 (9th Cir. 1970); **Lorenz v. Watson**, 258 F.Supp. 724 (E.D.Pa. 1966); See also, Churning by Securities Dealers, 80 Harv. L. Rev. 869 (1976).

Plaintiffs have failed to properly plead a churning violation. Aside from their failure to plead fraud as discussed above, plaintiffs have also not alleged that defendant exercised control over plaintiffs' account, a necessary element of any churning violation. **Hecht v. Harris, Upham & Co.**, 430 F.2d 1202 (9th Cir. 1970). All of plaintiffs' allegations state that defendant acted upon plaintiffs' direction or request. In addition plaintiffs have failed to allege that the commissions earned by the defendant were excessive when considered in relation to the size and character of their account. Consequently defendants' motion to dismiss is granted.

### V. Investment Advisors Act:

In light of the Supreme Court's recent decision in **Transamerica Mortgage Advisors, Inc. v. Lewis**, ____ U.S. ____, 48 U.S. L.W. 4001, holding that no private right of action for fraud exists under the Investment Advisors Act, 15 U.S.C. § 806-1 et seq., this claim is dismissed.

In summary defendant's motion to dismiss the complaint is allowed.

> **Zobel**
> **District Judge**