**FISCHMAN et al. v. RAYTHEON MFG. CO. et al.**

No. 190, Docket 21935.

United States Court of Appeals Second Circuit.

Argued March 14, 1951.

Decided April 23, 1951.

The complaint, filed by preferred and common stockholders of the Raytheon Company, is set forth in full in the Appendix to this opinion. It consists of two causes of action. The first, alleged to arise under the Securities Act of 1933, 15 U.S.C.A. § 77a et seq., states that the plaintiffs were induced to buy their shares by reason of a prospectus and registration statement for the sale of preferred shares

of that company, and that they sustained losses "by reason of untrue statements of material facts and omissions of material facts required to be stated therein or necessary to make the statements therein not misleading." This cause of action includes other allegations pursuant to the provisions of § 11 of the 1933 Act.

The second cause of action, alleged to arise under the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq., incorporates most of the allegations of the first cause of action but adds:

"Thirty-first: In connection with said sales of the securities of the defendant Raytheon, the defendants directly or indirectly employed devices, schemes or artifices to defraud or obtain money by means of untrue statements of material facts or omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; engaged in transactions, practices and course of business which operated or would operate as a fraud and deceit upon the plaintiffs; used and employed in connection with said sale of securities, manipulative and deceptive devices and contrivances in contravention of the rules and regulations of the Securities and Exchange Commission prescribed as necessary or appropriate in the public interest or for the protection of investors as more fully set forth in the prior paragraphs of this complaint."

The defendants filed a motion for dismissal of the complaint and for other relief. In connection with that motion, both defendants and plaintiffs filed affidavits. In the affidavits filed by plaintiffs it is stated, *inter alia,* that certain items in the prospectus, and in a statement filed with the Chicago Stock Exchange and the New York Curb Exchange, "were wilfully and knowingly misleading, false and omitted material disclosures by defendants in violation of the Securities Act of 1933 and 1934"; that the defendants embarked "upon a pattern of manipulation to effect this concealment"; and that the individual defendants, some of whom controlled the company, had made "tremendous personal profits" by sales of shares of common

owned by them. The affidavits filed by the defendants denied these charges.

The trial judge in part granted defendant's motions. His opinion is reported in 9 F.R.D. 707. His order, entered in connection with that opinion, reads in part as follows:

"Ordered, * * * that the second cause of action alleged in the complaint herein is hereby dismissed as not alleging any use of the mails or any means or instrumentality of interstate commerce or any facilities of any national securities exchange, and further, on the part of preferred stockholder plaintiffs, as alleging no facts except the claimed violations of the Securities Act of 1933, as amended, which may not be the basis for recovery by them under the Securities Exchange Act of 1934, and further, on the part of common stockholder plaintiffs, as alleging violations under the Securities Act of 1933, as amended, under which common stockholder plaintiffs have no rights, and which violations may not be the basis for said plaintiffs to maintain an action under the Securities Exchange Act of 1934, with leave to the plaintiffs, conditioned on the prior or concurrent filing of an undertaking as hereinafter required, to file within thirty (30) days after the service of a copy of this Order with notice of entry an amended complaint alleging a cause of action not based upon any alleged untrue statement of a material fact or omission to state a material fact in the prospectus or registration statement, or both, and which shall comply in all other respects with the opinion of this Court on said motion, but such leave to amend is without prejudice to the rights of the defendants under any statutes of limitations applicable to new claims for relief contained in an amended complaint; * * *

"Ordered, * * * that prior to or concurrently with the filing of an amended complaint as and to the extent permitted by this Order, the plaintiffs shall file an undertaking in the amount of Three Thousand Dollars ($3,000) for the payment of costs of this suit, including reasonable attorneys' fees, to all of the defendants herein, without prejudice to an application by

any of the defendants for an increase as the situation develops; and it is further

"Ordered, that if the plaintiffs do not, within thirty (30) days after the service of a copy of this Order with notice of entry, file an undertaking as required herein and an amended complaint, then, upon the filing of a certificate of the Clerk of this Court to that effect, judgment for defendant Raytheon Manufacturing Company and defendant Laurence K. Marshall shall be entered forthwith, dismissing the complaint finally."

The plaintiffs did not file the required undertaking within the thirty days. The judge then entered an order dismissing the complaint.

Louis H. O. Fischman, New York City, for plaintiffs-appellants.

Debevoise, Plimpton & McLean, New York City (Eli Whitney Debevoise and George N. Lindsay, Jr., New York City, of counsel), for defendants-appellees.

Before SWAN, CHASE and FRANK, Circuit Judge.

FRANK, Circuit Judge.

As we understand the preferred stockholders' position, they are content to rest their claim on the first cause of action and pursuant to Section 11 of the 1933 Act. They complain merely of that part of the order requiring security as a condition of their repleading to allege facts showing that the statute of limitations had not run. The common stockholders do not complain of the dismissal of the first cause of action as to them, nor do they contend that the second cause of action should not be amended to allege the use of the mails or some means or instrumentality of interstate commerce or of some facility of a national security exchange. They do assert that the order erred in barring them from including in an amendment of the second cause of action any allegation of "untrue statements of a material fact or omission to state a material fact in the prospectus or registration statement or both." They also complain of the exaction of security as a condition of their repleading.

1. The trial judge and the defendants reason as follows: (a) The 1933 and 1934 Acts must be read together as parts of a single statutory scheme, especially as the statute which enacted the 1934 Act also amended the 1933 Act. (b) The common stockholders have no claim under § 11 of the 1933 Act, since they purchased no securities which were the subject of the prospectus and registration statement. (c) Congress imposed restrictions on a suit under that section e. g. a short statute of limitations, and discretion in the court to require security in some circumstances. (d) It cannot reasonably be supposed that Congress intended that the common stockholders, under the 1934 Act, could maintain a suit for the very conduct not actionable at their suit under § 11 of the 1933 Act. (e) Especially is this true of a suit under Section 10(b) of the 1934 Act, for that section does not impose restrictions similar to those imposed by § 11 of the 1933 Act. (f) Therefore the common stockholders may not allege, as part of their claim, any misleading statements in or omissions from the prospectus or registration statement.

We do not agree with items (d), (e) and (f) of this argument. A suit under § 11 of the 1933 Act requires no proof of fraud or deceit, and such a suit may be maintained only by one who comes within a narrow class of persons i. e. those who purchase securities that are the direct subject of the prospectus and registration statement (here the purchasers of preferred stock). But proof of fraud is required in suits under § 10(b) of the 1934 Act and Rule X–10 B–5,[1] which was validly promulgated by the S. E. C. pursuant to that section. Congress reasonably, and without inconsistency, allowed suits of that sort which (1) are free of the restrictions applicable to a suit under § 11 of the 1933 Act and (2) which are not confined to those persons who may properly sue under that section but which include all who are the victims of the fraud. We think that

1. Cf. Norris & Hirschberg, Inc. v. S. E. C., 85 U.S.App.D.C. 268, 177 F.2d 228, 230; Ward LaFrance Truck Corporation, 13 S. E. C. 372, 381 note.

when, to conduct actionable under § 11 of the 1933 Act, there is added the ingredient of fraud, then that conduct becomes actionable under § 10(b) of the 1934 Act and the Rule, at the suit of any defrauded person, whether or not he could maintain a suit under § 11 of the 1933 Act.[2]

Were this not true, Section 11 of the 1933 Act, designed to protect investors even when there is no fraud, would afford a shelter or sanctuary for those who defraud investors. To illustrate: A corporation and its "insiders" put out a prospectus and registration statement, relating to a very small issue of preferred, which apparently complies with the provisions of the 1933 Act but which, as they well know, is false; this they do with the successful aim of fraudulently inducing some investors to purchase the preferred from the company but also other investors to purchase a much larger amount of the company's common from the "insiders". The fraud-doers would be delighted to reimburse the purchasers of the small amount of the preferred and to avoid liability to the defrauded purchasers of the large amount of the common. If the position taken by the defendants in the instant case were correct, the defrauded purchasers of the common in the illustrative case would have no redress whatever under the statute. This position we think untenable.[3]

Section 10(b), to be sure, does not explicitly authorize a civil remedy. Since, however, it does make "unlawful" the conduct it describes, it creates such a remedy.[4] As the suit here is "at law," the New York six-year statute of limitations—New York Civil Practice Act, § 48(2) and (5)—applies.[5]

The second cause of action alleges, in general terms, fraudulent conduct, injurious to the common stockholders, in the use of the prospectus or registration statement. The common stockholders should be permitted to amend by alleging, with sufficient particularity,[6] facts showing such

2. We note in passing that a suit under § 17 of the 1933 Act—a suit which must rest on fraudulent conduct—seems also to be free of the restrictions imposed on a Section 11 suit. If so, then a complaint may couple a Section 11 cause of action, subject to those restrictions, with a Section 17 cause of action, free of them—provided the Section 17 cause of action adds adequate allegations of fraud to the allegations made in the Section 11 cause of action. Cf. Osborne v. Mallory, D.C., 86 F.Supp. 869.

It should be noted that the wording of Rule X–10B–5 is much the same as that of Section 17 of the 1933 Act, except that, in accordance with § 10(b), it relates to fraudulent purchases as well as fraudulent sales. See Ward LaFrance Corporation, 13 S. E. C. 372, 381 note.

3. Cf. Osborne v. Mallory, D.C., 86 F.Supp. 869, 879.

4. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939; Texas & Pac. Ry. v. Rigsby, 241 U.S. 33, 39–40, 36 S.Ct. 482, 60 L.Ed. 874; Goldstein v. Groesbeck, 2 Cir., 142 F.2d 422, 427, 154 A.L.R. 1285; Osborne v. Mallory, D.C., 86 F.Supp. 869, 879; Restatement of Torts, § 286; Prosser, Torts, § 39 (1941); Harper, Torts, § 78 (1933); cf. Morris, The Relation of Criminal Statutes to Tort Liability, 46 Harv.L.Rev. 453 (1933); Lowndes, Civil Liability Created by Criminal Legislation, 16 Minn.L.Rev. 361 (1932).

Cf. 59 Yale L.J. 1120, 1134 (1950): "But the most persuasive reason for concluding that 10(b) [of the 1934 Act] creates a private cause of action is found in the Act itself. As originally enacted, Section 29(b) merely declared that all contracts which violate any provision of the Act, or any rule or regulation under the Act, shall be void. In 1938, Congress passed an amendment to Section 29(b) imposing a short statute of limitations on actions brought for violations of Commission rules under Section 15(c) (1). Since Section 15(c) (1), like Section 10 (b), does not specifically provide for a private action, the implication of the amendment was that Congress had always assumed that private actions under those and similar provisions were available."

5. See Cope v. Anderson, 331 U.S. 461, 463–464, 67 S.Ct. 1340, 91 L.Ed. 1602; Rawlings v. Ray, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605; Osborne v. Mallory, D.C., 86 F.Supp. 869, 879; cf. Seaboard Terminals Corp. v. Standard Oil Co., D.C., 24 F. Supp. 1018; Dipson Theatres v. Buffalo Theatres, D.C., 8 F.R.D. 86.

6. See F. R. C. P. 9(b); Moore, Federal Practice (2d ed.) § 9.03.

788

conduct, within the meaning of the statute.[7] Consequently, we think that portion of the order permitting "an amended complaint alleging a cause of action not based upon any alleged untrue statement of a material fact or omission to state a material fact in the prospectus or registration statement or both," if construed to mean that the amended complaint may contain no reference to the prospectus or registration statement, places too narrow a restriction upon the common stockholder plaintiffs.

Section 9(a) (4) of the 1934 Act also requires allegations and proof of fraud. Moreover, it does impose restrictions somewhat like those imposed on a suit under § 11 of the 1933 Act. The common stockholders should be permitted to amend (if they can do so) by alleging facts showing that the defendants deliberately used the prospectus or registration statement for the purpose of fraudulently inducing the purchase of common stock sold by the defendants and that, in this fraudulent purpose, the defendants were successful vis a vis the common stockholders here.

We construe Section 18(a) of the 1934 Act as applicable to a document filed with a national securities exchange. If the registration statement or prospectus or other document was thus filed, something more occurred than the conduct covered by § 11 of the 1933 Act. Nothing in that section is therefore inconsistent with a remedy under § 18(a) of the 1934 Act. Accordingly, the common stockholders may also maintain their action under that section if (but only if) they amend to allege a filing with a national securities exchange.

2. Section 11(e) of the 1933 Act authorizes the trial court to require security. Section 13 of that Act prescribes a short statute of limitations for a Section 11 suit i. e. such a suit must be brought "with-in one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence". On the basis of affidavits filed by plaintiffs and defendants, the trial judge said: "I feel that the plaintiffs should be required to file an undertaking pursuant to section 11 of the Act of 1933. The plaintiffs' affidavits charge matters far afield of the allegations of the complaint, but they do not dispel the notion that they knew of the alleged misleading statements and the like long before they presently assert. I direct, therefore, that the plaintiffs shall file an undertaking in the amount of $3,000 to cover all the defendants without prejudice to an application of any of the defendants for an increase as the situation develops." Nevertheless, the trial judge held that the preferred stockholders might file an amended complaint containing allegations sufficient to bar the running of the statutory period.

Sections 9 and 18 of the 1934 Act each contains a short period of limitations and each also authorizes the exaction of security for costs, etc.[8] But Section 10 of the 1934 Act contains neither such provision. Although the trial judge permitted the common stockholders to replead, yet, as noted above, he required a bond as a condition of repleading by either the common or preferred stockholders. Neither the preferred nor common stockholders complied with this bond condition, and a final order was entered dismissing the complaint. On their appeal from that order, plaintiffs may challenge the validity of the bond requirement, since their failure to comply with it led to the final order of dismissal.

We consider the requirement premature as to both the preferred and the common. Passing the question whether the judge's "feeling" and "notion" about the knowledge of the preferred stockhold-

7. See Charles Hughes & Co. v. S. E. C., 2 Cir., 139 F.2d 434, 437; Hughes v. S. E. C., 85 U.S.App.D.C. 56, 174 F.2d 969, 975; Norris & Hirschberg v. S. E. C., 85 U.S.App.D.C. 268, 177 F.2d 228, 233; Kardon v. National Gypsum Co., D.C., 73 F.Supp. 798; cf. U. S. v. Groves, 2 Cir., 122 F.2d 87, 90; Deaver v. U. S., 81 U.S.App.D.C. 148, 155 F.2d 740, 744; People v. Federated Radio Corp., 244 N. Y. 33, 38–39, 154 N.E. 655.

8. See Sections 9(e), 18(a) and 18(c).

ers sufficed to show a lack of "merit,"[9] we think that, as amendment of the complaint was permitted, consideration of whether a bond should be exacted must be postponed until the amended complaint has been filed. This conclusion as to the common stockholders is reinforced by the fact that, if and insofar as the amended complaint may allege a valid claim only under Section 10 of the 1934 Act, the judge will have no authority to require a bond.

When the complaint is amended, if such a requirement is, on the then state of the record, proper as to either or both the preferred or common stockholders, there should be no exaction of a joint undertaking covering all causes of action, but the requirement should be limited to those causes of action as to which the statute authorizes a bond.

Reversed and remanded.

## Appendix

The complaint reads as follows: "Plaintiffs, above named, by Louis H. O. Fischman, their attorney, on behalf of themselves and in representative capacity on behalf of all former and present preferred and common stockholders of the Raytheon Manufacturing Company, similarly situated, as and for their bill of complaint show and allege, upon information and belief, except as to paragraphs marked '1, 2, 4, 5, 6, 7, 8, 9, 11, 14, 16, 19, 27' which are alleged upon knowledge:

*"For a First Separate and Distinct Cause of Action:*

First: This is an action arising under the Securities Act of 1933, as amended (U. S.Code, Title 15, Section 77a, et seq.).

"Second: At all times hereinafter mentioned, the defendant Raytheon Manufacturing Company (hereinafter referred to as Raytheon) was a corporation organized and existing under and by virtue of the laws of the state of Delaware, maintaining one of its principal places of business in the State of New York.

"Third: At all times hereinafter mentioned, the defendant Reynolds & Co. (hereinafter referred to as Reynolds) was a member of the New York Stock Exchange and National Security Dealers Association.

"Fourth: At all times hereinafter mentioned, the individual defendants herein named excepting Laurence K. Marshall were and still are co-partners doing business under the firm name and style of Reynolds & Co., hereinafter referred to collectively as Reynolds & Co.

"Fifth: At all times hereinafter mentioned Laurence K. Marshall was and is a director of Raytheon and at divers times held the office of President and Chairman of the Board of Raytheon (the latter position now being held by him).

"Sixth: On September 24, 1945 the capitalization of Raytheon consisted of the following:

| Title of Security | Amount Authorized | Amount Outstanding Sept. 24, 1945 |
|---|---|---|
| Preferred stock— | | |
| $5.00 par value..... | 128,612 shares | 128,571 shares |
| Common stock— | | |
| 50¢ par value...... | 1,500,000 shares | 1,052,995 shares |

"Seventh: Sometime prior to October 5, 1945, Raytheon entered into an underwriting agreement with Reynolds, as principal underwriter and manager, for the sale of new securities designated as 100,-000 shares Raytheon $2.40 cumulative preferred stock convertible, pursuant to which Reynolds and others were to underwrite the sale of such stock at a gross price of $51.50 per share and were to receive for underwriting discounts or commissions $3.50 per share leaving a net sum of $48.00 per share to Raytheon.

"Eighth: At some time prior to October 5, 1945 Raytheon did cause a preparation of prospectus and registration statement for the sale of the said $2.40 cumulative preferred stock convertible and therein set forth among other things that Reynolds were the principal underwriters; that Laurence K. Marshall signed said prospectus and registration statement as President of Raytheon.

**9.** Cf. Acker v. Schulte, D.C., 74 F.Supp. 683, 689–690; Stella v. Kaiser, D.C., 83 F.Supp. 431.

"Ninth: That said prospectus is dated October 5, 1945 and was distributed at the instance of Raytheon and Reynolds.

"Tenth: Subsequent to October 5, 1945 the sale of 100,000 shares Raytheon $2.40 cumulative preferred stock convertible were fully completed and Raytheon received a net proceeds of $4,800,000 and Reynolds received its full share of commissions.

"Eleventh: That the prospectus dated October 5, 1945 relative to the underwriting of the $2.40 cumulative preferred stock convertible provided among other things as follows:

(a) 'the Company has agreed, at the request of Reynolds, at the company's expense promptly to use its best efforts to procure the listing on a national securities exchange of the $2.40 Cumulative Preferred Stock and of the shares of Common Stock into which such Preferred Stock is convertible.

(b) 'tax returns for the fiscal years ended May 31, 1942 and December 31, 1942 respectively, and for subsequent periods, have not been audited by revenue agents.'

"Twelfth: That the net worth of Raytheon as of May 31, 1945 in accordance with the schedules of the company attached to said prospectus disclosed a net worth of $10,691,975 and a net working capital of $7,639,614 of which almost all was restricted as security under government contracts and further made no provision for taxes for the fiscal years ending May 31, 1942 and December 31, 1942 respectively and for subsequent periods.

"Thirteenth: In August, 1948 Raytheon, in its 20th annual report covering the year ending May 31, 1948 disclosed that it was assessed for additional taxes covering the fiscal years May 31, 1942–1944 inclusive to be in the sum of $4,872,000 exclusive of interest approximating $1,200,000 making a total aggregate liability of approximately $6,000,000. That said tax liability is now admitted by Raytheon. That disclosure of such enormous tax liability by Raytheon, in the prospectus of October 5, 1945, would have indicated a net worth of $5,800,000

approximately without any charge for interest as against a net worth of $10,690,000 approximately. That said tremendous reduction of the net worth is a material fact and the nondisclosure of the tax liability potential in October 1945, was willfully and purposely concealed. That this tax assessment constituted almost 40% of the total net worth of the company in October 1945. That the reduced net worth by reason of the tax obligation, as now ascertained, would have left Raytheon devoid of cash and instead would have been in the 'red.' That said tax obligation, as now disclosed, reduces substantially the earnings of Raytheon for the years in question and also reduces substantially the earnings per common share of stock upon which a basis of earnings of the preferred stock was projected. That the tax problems for the year[s] ending 1942 to 1944 were known to the defendants and not disclosed for fraudulent, misleading and dishonest purposes. That the surplus of $6,-400,000 would have been reduced to $1,-600,000 reflecting a different capital structure which would not have permitted the financing as proposed and completed.

"Fourteenth: That Raytheon did not apply to the New York Stock Exchange for listing of its preferred and common stocks. since 1945 to date. That the plaintiff Daniel S. Fischer made a proposal in August. 1946 to Raytheon for the listing of such securities, however Raytheon opposed such. listing and stated in its proxy of October 4, 1946 that 'it has given careful consideration to making such an application and has discussed the matter from time to time with its financial consultants. The management intends to make such an application when it believes it to be appropriate and in the best interests of the stockholders.' Reynolds stated in the same proxy of Raytheon 'at the present time would in its judgment, in view of the current status of the company's past war operations be inadvisable and not in the best interests of the stockholders. The management concurs with this advice.' That the common and preferred stocks of Raytheon have not been listed on the

New York Stock Exchange and still are not listed nor has any application been made toward such listing.

"Fifteenth: Sometimes in the latter part of 1945 and prior to October 5, 1945 Raytheon filed with the Securities and Exchange Commission, a registration statement under the Securities Act of 1933 as the same has been amended, for the purpose of registering the securities herein described, which securities of preferred stock were offered to the general investing public. The registration statement is referred to herein and is incorporated by reference and made a part hereof as though set forth at length herein.

"Sixteenth: The said registration statement was signed by defendant Raytheon as issuer of said securities proposed thereby to be registered, acting by and through its duly authorized officers and directors namely Laurence K. Marshall as President and Chairman of the Board of Directors.

"Seventeenth: As part of said registration statement, the defendants prepared and filed with the Securities and Exchange Commission and thereafter distributed the prospectus bearing the effective date of October 5, 1945 designated as part of said registration statement.

"Eighteenth: Pursuant to the Securities Act of 1933 as the same has been amended and by order of the Securities and Exchange Commission, said registration statement filed in September, 1945 became effective as of October 5, 1945.

"Nineteenth: On or about October 5, 1945 the defendant underwriter offered for sale to the general investing public 100,000 shares of the $2.40 preferred stock cumulative convertible and the plaintiffs herein purchased the securities of Raytheon both common and preferred upon reliance that the statements made in the said prospectus dated October 5, 1945 were true, complete, contained no material omissions and all things to be performed would be performed, and as a consequence of the acts of the defendants which were contrary to such purposes and aims, did suffer serious losses upon the sale of some of the securities and as to such securities still held as follows:

(a) As to Securities Sold

| Name | Number of Shares | Net Loss |
|---|---|---|
| Doris Fischman | 700 preferred | 1,852.02 |
| Doris Fischman & Louis Fischman | 2,850 common | 33,469.92 |

| David S. Fischman & | | |
|---|---|---|
| Title of Security | Amount Authorized | Sept. 24, 1945 |
| Claire Fischman | 1,200 common | 7,500.00 approx. |

(b) As to Securities Not Sold

| Name | Number of Shares | Average Price paid per share |
|---|---|---|
| Daniel S. Fischer | 150 common | $21.50 |
| Claire Fischman & David S. Fischman | 850 common | 16.50 |
| Rose Jaskol | 100 preferred | 54.00 |

"Twentieth: The said registration statement which became effective October 5, 1945 relating specifically to the public offering of the $2.40 cumulative preferred stock convertible, contained untrue statements of material facts and omissions of material facts required to be stated therein or necessary to make the statements therein not misleading as herein set forth.

"Twenty-First: That the plaintiffs were induced to purchase the said common and preferred stocks by reason of the prospectus dated October 5, 1945 and the loss occasioned to them is by reason of the untrue statements of material facts and omissions of material facts required to be stated therein or necessary to make the statements therein not misleading as herein set forth.

"Twenty-Second: That the statements of Raytheon in its prospectus were untrue, inaccurate and misleading as to its net worth, earnings, potential tax liability, earned suplus and also as to listing of the common and preferred stocks on the New York Stock Exchange.

"Twenty-Third: That the defendants knew or should have known that the statements herein alleged were false and misleading.

"Twenty-Fourth: The respective plaintiffs did not know of said omissions and of said false and misleading statements as contained in the registration statement

792

hereinbefore set forth at the time they purchased the securities of Raytheon.

"Twenty-Fifth: The respective plaintiffs did not discover said omissions and false and misleading statements until shortly prior to the institution of this action.

"Twenty-Sixth: The present market value of the preferred stock of Raytheon is $29.00 per share and the present market value of its common stock is $6.50 per share.

"Twenty-Seventh: By reason of the foregoing the respective plaintiffs have been damaged in the following amounts:

| | |
|---|---|
| Boris Fischman | $ 1,852.03 |
| David S. Fischman & Claire | 16,000.00 |
| Doris Fischman & Louis Fischman | 33,469.92 |
| Daniel S. Fischer | 2,200.00 |
| Rose Jaskol | 2,500.00 |

"Twenty-Eighth: The plaintiffs bring this action in their own right and in representative capacity on behalf of all former and present common and preferred stockholders of the defendants Raytheon similarly situated. The class on behalf of whom this action is brought consists of all persons who acquired the common and preferred stock of the defendant Raytheon on or after October 5, 1945, the effective date of the registration statement, and who are presently the owners thereof or have disposed of their shares of stock, having in the first instance purchased their stock by reason of the contents of the prospectus dated October 5, 1945. The number of persons constituting this class exceeds 3,000 people and they are jointly and commonly interested in the action set forth herein. The rights and claims of the plaintiffs herein are identical with the rights and claims of the persons constituting the class hereinbefore described and the action herein involves questions of fact and law common to the plaintiffs and the persons constituting the class. The persons constituting said class are so numerous as to make it impracticable to bring them all before the Court and it further would be too expensive to join them as parties, and therefore the plaintiffs file this suit for their joint benefit as a class action and also for their individual benefit.

"For a Second, Separate and Distinct Cause of Action:

"Twenty-Ninth: This is an action arising under the Securities Exchange Act of 1934, as amended (U.S.Code, Title 15, Section 78a, et seq.).

"Thirtieth: Plaintiffs repeat and reallege each and every allegation contained in paragraphs '1' to '28' inclusive with the same force and effect as if fully set forth herein.

"Thirty-First: In connection with said sales of the Securities of the defendant Raytheon, the defendants directly or indirectly employed devices, schemes or artifices to defraud or obtain money by means of untrue statements of material facts or omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; engaged in transactions, practices and course of business which operated or would operate as a fraud and deceit upon the plaintiffs; used and employed in connection with said sale of securities, manipulative and deceptive devices and contrivances in contravention of the rules and regulations of the Securities and Exchange Commission prescribed as necessary or appropriate in the public interest or for the protection of investors as more fully set forth in the prior paragraphs of this complaint.

"Thirty-Second: Each of the plaintiffs demand in addition to their respective damages set forth in paragraph 'twenty-seventh' of this complaint, exemplary damages in such amount as to the Court shall be just and proper.

"Wherefore, the respective plaintiffs demand, (a) judgment against the defendants jointly and severally in the amounts set forth opposite their names in paragraph 'twenty-seventh' herein plus exemplary damages to each of them in such amounts as to the Court may seem just and proper, with interest thereon (b) judgment against the defendant jointly and severally for all persons constituting the class on behalf of whom this action is brought who may intervene and become plaintiffs herein in

such amounts as shall be determined by the Court, plus exemplary damages as to the Court may seem just and proper, with interest thereon, and, (c) reasonable costs, expenses and attorneys fees as to the Court may seem just and proper."