695 F.2d 302
 Fed. Sec. L. Rep. P 99,013
Dean BERGER, Eugene V. Heisler, Roland F. Murman, Ralph
Schmidgall, and W. Harry Wilson, Appellants,
v.
BISHOP INVESTMENT CORPORATION, R. Rowland & Co., Inc.,
Truett H. Peachey and Ronald E. West, Appellees.
 No. 81-2435.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 16, 1982.
Decided Dec. 10, 1982.
 
 Harry O. Moline, Moline, Tegethoff, Ottsen, Mauze & Leggat, St. Louis, Mo., for appellant.
 Richard P. Sher, Richard J. Pautler, J. Reed Johnston, Jr., St. Louis, Mo., for appellee R. Rowland & Co., Inc.; Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., of counsel.
 
 
 1
 Timothy N. Vujnich, Cooper, Seeley & Vujnich, William E. Cooper, Klutho, Cody, Kilo, Flynn & Cooper Attorneys, Inc., St. Louis, Mo., for appellees Bishop Inv. Corp. and Ronald E. West.
 
 
 2
 Before HEANEY and ARNOLD, Circuit Judges and COLLINSON,* Senior District Judge.
 
 
 3
 COLLINSON, Senior District Judge.
 
 
 4
 This case raises a significant and much-litigated issue regarding the interrelationship of express and implied remedies under the federal securities laws. The precise question presented for decision is whether the plaintiffs-appellants may pursue an implied remedy under Section 10(b) of the Securities Exchange Act of 1934 and Securities Exchange Commission Rule 10b-5, promulgated thereunder, for transactions alleged in the complaint for which there may be an express remedy pursuant to Section 12(2) of the Securities Act of 1933.
 
 
 5
 Because the Court answers this question in the affirmative, we reverse the district court and remand for further proceedings.
 
 
 6
 I. THE COMPLAINT AND PROCEEDINGS BELOW.
 
 
 7
 According to the complaint, the five plaintiffs-appellants in this action are individual purchasers of limited partnership units in Diamond Associates, Ltd. These units were offered and sold to the plaintiffs-appellants by the defendant-appellee R. Rowland & Co. (Rowland), a registered broker-dealer in securities, with the assistance of defendant-appellee Bishop Investment Corporation (Bishop), a California corporation engaged in the business of arranging for the sale of limited partnership interests, preparing offering circulars, collecting sales proceeds and coordinating these matters with broker-dealers. The individual defendant-appellee, Ronald E. West (West) was the shareholder and controlling person of Bishop, and defendant-appellee Truett H. Peachey (Peachey) was an officer and controlling person, as well as the manager of Diamond Management, Inc., the managing general partner of Diamond Associates, Ltd.
 
 
 8
 Apparently the new limited partnership did not prove to be successful and Peachey, on behalf of Diamond Management, Inc., the general partner, filed a petition in the bankruptcy court in Houston, Texas, on or about May 6, 1980. Approximately four years following the plaintiffs-appellants' purchases of the limited partnership interests, on August 28, 1981, the plaintiffs-appellants filed this complaint in the district court alleging violation of Section 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. Sec. 78j and S.E.C. Rule 10b-5 of the regulations promulgated thereunder, 17 C.F.R. Sec. 240.10b-5. They seek to recover the sum of $62,500.00, which represents the $12,500.00 investment of each plaintiff, plus their costs.
 
 
 9
 The critical allegations in the plaintiffs-appellants' complaint are contained in paragraph 9, which is quoted in its entirety:
 
 
 10
 In about August of 1977, the Defendants offered and sold to Plaintiffs limited partnership units at a price of $12,500 per unit by representing, among other things, that Peachey, manager of the general partner, had constructed in excess of 3,000 apartment units, 2,000 single family residences, 13 sections of residential subdivisions, three office buildings, three major hospitals, three major shopping center developments, 17 fast food stores, and 26 free standing strip shopping center complexes, and that he, Peachey, and/or the general partner Diamond Associates, Ltd. would guarantee for the first three years of the partnership a return equal to 8% of the invested dollars of the limited partners; but, intentionally or recklessly, omitted to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made not misleading, to wit: that Peachey Construction Company had previously filed a Petition in Bankruptcy in the Bankruptcy Court in Houston, Texas.
 
 
 11
 Following other motions and rulings,[1] the defendants-appellees Bishop and West filed a motion to dismiss on a number of theories, including the issue relevant to this appeal. In substance, the defendants-appellees argued that the facts contained in the complaint clearly stated a cause of action arising under Section 12(2) of the Securities Act of 1933, which provides for an express remedy;[2] a cause of action under Section 12(2) was barred by the applicable statute of limitations set forth in Section 13 of the Securities Act of 1933;[3] to allow the plaintiffs-appellants to pursue the implied remedy arising under Section 10(b) and Rule 10b-5[4] when express remedies are provided would undermine the statutory pattern of remedies created by Congress under the Securities Act of 1933. The plaintiffs-appellants do not contest the applicability of Section 12(2) to defendants-appellees' conduct. Rather, they contend that Section 12(2) is not the sole or exclusive remedy afforded them under the securities laws; that Section 10(b) is likewise applicable to the defendants-appellees' alleged misconduct; and that they are entitled to pursue a remedy under Section 10(b) regardless of the availability of a Section 12(2) remedy.
 
 
 12
 The district court adopted the defendants-appellees' reasoning and dismissed the complaint, holding that the plaintiffs-appellants were precluded from proceeding under the 1934 Act when they could have brought their suit under Section 12(2) of the 1933 Act if the complaint had been timely filed. Plaintiffs-appellants appealed from this ruling of the district court.
 
 
 13
 II. AN IMPLIED ACTION EXISTS UNDER RULE 10B-5.
 
 
 14
 An implied right of action has been available for violations of Section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder for more than 35 years. The private damage suit under Section 10(b) was first recognized in Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa.1946), and subsequently has become a firmly entrenched remedy in the field of securities law and has been approved by the United States Supreme Court on several occasions. See, e.g., Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 730, 95 S.Ct. 1917, 1922, 44 L.Ed.2d 539 (1975); Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 169 n. 9, 30 L.Ed.2d 128 (1971). In Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), the Supreme Court noted:
 
 
 15
 Although Sec. 10(b) does not by its terms create an express civil remedy for its violation, and there is no indication that Congress, or the Commission when adopting Rule 10b-5, contemplated such a remedy, the existence of a private cause of action for violations of the statute and the Rule is now well-established.
 
 
 16
 425 U.S. at 196, 96 S.Ct. at 1382.
 
 
 17
 III. AVAILABILITY OF EXPRESS REMEDIES UNDER SECURITIES LAWS DOES NOT PRECLUDE IMPLIED 10B-5 ACTION.
 
 
 18
 1. Longstanding Judicial Interpretation.
 
 
 19
 The defendants do not dispute that Section 10(b) has been used in the past to state a cause of action for misconduct similar to that alleged by the plaintiffs in their complaint. Rather, the defendants argue that the doctrine of an implied remedy under Section 10(b) should be partially abrogated so as to exclude the implied cause of action when there may exist an express remedy for the same conduct under another section of the securities laws.
 
 
 20
 This argument has been raised and rejected numerous times in the past by both district and appellate courts. In the early and much-cited case of Fischman v. Raytheon Manufacturing Co., 188 F.2d 783 (2d Cir.1951), the Second Circuit held that an implied action could be maintained under Section 10(b) despite the availability of an express remedy under another section of the securities acts. See also Schaefer v. First National Bank of Lincolnwood, 509 F.2d 1287 (7th Cir.1975), cert. denied, 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976); Jordan Building Corp. v. Doyle, O'Connor & Co., 401 F.2d 47 (7th Cir.1968); Ellis v. Carter, 291 F.2d 270 (9th Cir.1961); Matheson v. Armbrust, 284 F.2d 670 (9th Cir.1960), cert. denied, 365 U.S. 870, 81 S.Ct. 904, 5 L.Ed.2d 860 (1961); In re New York City Municipal Securities Litigation, 507 F.Supp. 169 (S.D.N.Y.1980); Wolgin v. Magic Marker Corp., 82 F.R.D. 168 (E.D.Pa.1979); Beecher v. Able, 435 F.Supp. 397 (S.D.N.Y.1977); Seiden v. Nicholson, 69 F.R.D. 681 (N.D.Ill.1976); Stewart v. Bennett, 359 F.Supp. 878 (D.Mass.1973); Wolfson v. Solomon, 54 F.R.D. 584 (S.D.N.Y.1972); Rosen v. Bergman, 40 F.R.D. 19 (S.D.N.Y.1966); Trussell v. United Underwriters, Ltd., 228 F.Supp. 757 (D.Colo.1964); Dauphin Corp. v. Redwall Corp., 201 F.Supp. 466 (D.Del.1962).
 
 
 21
 The two district court cases relied on by the defendants, Rosenberg v. Globe Aircraft Corp., 80 F.Supp. 123 (E.D.Pa.1948) and Montague v. Electronic Corp. of America, 76 F.Supp. 933 (S.D.N.Y.1948) are not helpful. As noted by the district court in Stewart v. Bennett, 359 F.Supp. 878, 883 n. 12 (D.Mass.1973), both of these cases precede the judicial development of Rule 10b-5 actions. Moreover, Montague has no precedential value following the Second Circuit's opinion in Fischman, supra, and its more recent opinion in Ross v. A.H. Robins Co., 607 F.2d 545 (2d Cir.1979), cert. denied, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802, reh'g denied, 448 U.S. 911, 100 S.Ct. 3057, 65 L.Ed.2d 1140 (1980) (discussed infra ). And Rosenberg has not been followed within its own district or by other courts within the same circuit. Premier Industries, Inc. v. Delaware Valley Financial Corp., 185 F.Supp. 694 (E.D.Pa.1960); Dauphin Corp. v. Redwall Corp., 201 F.Supp. 466 (D.Del.1962).
 
 
 22
 2. Recent United States Supreme Court Decisions.
 
 
 23
 Despite this almost uniform recognition of the existence of an implied remedy under Section 10(b) contemporaneously with express remedies under the securities laws, the defendants suggest that certain dicta in the recent United States Supreme Court decisions of Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) and Touche Ross & Co. v. Redington, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) reflect a changing attitude on this point. However, none of these cases dealt with the question before us.
 
 
 24
 The Court in Blue Chip Stamps refused to extend the class of Section 10(b) plaintiffs to those who are neither purchasers nor sellers of securities;[5] the Court in Hochfelder refused to expand the scope of Section 10(b) to include negligent misstatements or omissions; and the Court in Redington refused to imply a private cause of action at all for violations of Section 17(a) of the 1934 Act. Contrary to defendants' contentions, we find nothing in the language of the Court evidencing an intent to cut back on the established contours of the Section 10(b) remedy.
 
 
 25
 Following the United States Supreme Court decisions cited by the defendants, three circuit courts of appeals have been confronted with the issue of whether the express remedies under the securities laws should be considered exclusive. Huddleston v. Herman & MacLean, 640 F.2d 534 (5th Cir.1981), cert. granted, 456 U.S. 914, 102 S.Ct. 1766, 72 L.Ed.2d 173 (1982);[6] Wachovia Bank and Trust Co. v. National Student Marketing Corp., 650 F.2d 342 (D.C.Cir.1980), cert. denied, 452 U.S. 954, 101 S.Ct. 3098, 69 L.Ed.2d 965 (1981); Ross v. A.H. Robins Co., 607 F.2d 545 (2d Cir.1979), cert. denied, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802, reh'g denied, 448 U.S. 911, 100 S.Ct. 3057, 65 L.Ed.2d 1140 (1980). Although decided after Blue Chip Stamps, Hochfelder and Redington, each court concluded that the Section 10(b) action should be left intact.
 
 
 26
 In discussing Redington and other recent Supreme Court opinions, the Court of Appeals for the District of Columbia Circuit stated:
 
 
 27
 It may be reasonable to infer from these recent pronouncements that the Court is not favorably inclined toward expanding the doctrine of implied remedies; it is unreasonable to imply as cross-appellants seem to in their briefs, that all the implied remedies that have previously been established have now been swept away.
 
 
 28
 650 F.2d at 353.
 
 
 29
 The Second Circuit also found Redington inapposite as it dealt
 
 
 30
 primarily with the issue of under what circumstances a private civil remedy should be judicially created for the violation of a particular statutory provision...
 
 
 31
 We, however, are not being asked to create a new judicial remedy. It is well established that a private remedy exists for actions violative of Sec. 10(b) and Rule 10b-5. Rather than being asked to create a new remedy, we are being asked to determine whether a party should be allowed to invoke an established remedy in the face of a statute which may, in certain circumstances, provide another remedy for the same conduct.
 
 
 32
 607 F.2d at 553.
 
 
 33
 The United States Supreme Court addressed an issue more closely resembling the matter before us in S.E.C. v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). In that case it was contended that Section 10(b) did not cover misrepresentations made in proxy materials because Section 14 of the Securities Exchange Act, 15 U.S.C. Sec. 78n and the rules issued thereunder, created a complex regulatory scheme covering proxy solicitations. In rejecting this argument, the Supreme Court stated:
 
 
 34
 [T]he existence or nonexistence of regulation under Sec. 14 would not affect the scope of Sec. 10(b) and Rule 10b-5. The two sections of the Act apply to different sets of situations. Section 10(b) applies to all proscribed conduct in connection with a purchase or sale of any security; Sec. 14 applies to all proxy solicitations, whether or not in connection with a purchase or sale. The fact that there may well be some overlap is neither unusual nor unfortunate.
 
 
 35
 393 U.S. at 468, 89 S.Ct. at 573 (emphasis added).
 
 
 36
 Similarly, the possibility of an overlap between Sections 12(2) and 10(b) does not provide a valid basis for rejecting the implied cause of action under Section 10(b).
 
 
 37
 3. Distinct Causes Of Action.
 
 
 38
 Supplementing their argument that recent Supreme Court decisions prophesy a change in existing law, the defendants intimate that previous judicial opinions are just plain wrong. The defendants argue that the 1933 Act and the 1934 Act should be read together as a closely interrelated scheme devised by Congress to regulate securities transactions; that rules of statutory construction should be considered and applied; and that legislative intent should be ascertained and examined. Applying these criteria, the defendants' argument continues that to allow the plaintiffs to proceed under Section 10(b) of the 1934 Act when the defendants' conduct is actionable under the express cause of action provided by Section 12(2) would nullify the procedural restrictions contained in the 1933 Act; that the implicit repeal of these restrictions was not Congress' intent; and that this result violates the basic principles of statutory construction that "repeals by implication are not favored and when there are two Acts upon the same subject, the rule is to give effect to both, if possible. United States v. Borden Company, 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939)." Appellees' brief pp. 27-28.
 
 
 39
 We agree with each of the defendants' principles, but not with their conclusions. Reading the two Acts in pari materia, as urged by the defendants, we believe there is no inconsistency between Section 12(2) of the 1933 Act and Section 10(b) of the 1934 Act, nor does the availability of a Rule 10b-5 action nullify or repeal the provisions contained in Section 12(2). We base our conclusions on the simple but critical fact that the two sections involve entirely distinct causes of action.
 
 
 40
 Although the conduct prohibited by the statutes may overlap at times, a cause of action under Section 10(b) and a cause of action under Section 12(2) differ in material respects as to their elements, defenses, and measure of damages. For our purposes, only a few of the many distinctions need to be outlined here.
 
 
 41
 Section 12(2) creates liability for untrue statements or omissions made by means of a prospectus or oral communication, and a Section 12(2) action can be pursued only by purchasers of securities, not by sellers. Rule 10b-5, on the other hand, is much broader in its coverage; it deals with "any device, scheme or artifice to defraud" and applies to both purchases and sales of securities. However, the prime distinction between the two sections is the degree of culpability of the defendant that the plaintiff must prove to be successful. Under the rule established in Hochfelder, supra, if a party desires to bring a Section 10(b) action, he must be prepared to plead and prove the involvement of fraud or deceit. Imposition of liability under Section 12(2), on the other hand, requires no showing of scienter, but rather permits recovery upon proof of a negligent misstatement or omission. Considering this crucial distinction and reading the two acts as a whole, we believe there is nothing contradictory in the sections. Because mere negligence may result in liability, it is appropriate to impose stringent procedural requirements on a Section 12(2) cause of action, including a short statute of limitations. Conversely, in view of the plaintiffs' greatly increased burden of proof in a Section 10(b) action, less restrictive provisions are justified. As noted by the district court in Thiele v. Shields, 131 F.Supp. 416 (S.D.N.Y.1955):
 
 
 42
 That Congress intended to exempt a seller of municipal bonds from liability for failure to prove that he exercised reasonable care in investigating the truth of a representation is not inconsistent with the subjection to civil liability of the same seller after the purchaser proves he knowingly misrepresented a fact.
 
 
 43
 131 F.Supp. at 419-20.
 
 
 44
 Our holding that the plaintiffs are entitled to rely on Section 10(b) free of the restrictions of Section 12(2) does not nullify those procedural provisions. If the plaintiffs want the advantage of the 1933 Act's diminished burden of proof, they cannot avoid the restrictive provisions of that Act. Only when the plaintiffs have accepted the burden of proving scienter under Section 10(b) are defendants deprived of the benefit of the shorter statute of limitations under Section 12(2). Moreover, if the plaintiffs attempt to proceed under Section 10(b) but cannot carry their burden of proving fraud, the provisions of Section 12(2) must be applied.
 
 
 45
 Contrary to the defendants' assertions, we believe our decision is buttressed by the Supreme Court's language in Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). To support its holding that scienter is a necessary element in all Section 10b-5 actions, the Court stated:
 
 
 46
 We also consider it significant that each of the express civil remedies in the 1933 Act allowing recovery for negligent conduct, see Secs. 11, 12(2), 15, 15 U.S.C. Secs. 77k, 77l (2), 77o, is subject to significant procedural restrictions not applicable under Sec. 10b... We think these procedural limitations indicate that the judicially created private damages remedy under Sec. 10b--which has no comparable restrictions--cannot be extended, consistently with the intent of Congress, to actions premised on negligent wrongdoing. Such extension would allow causes of action covered by Secs. 11, 12(2), and 15 to be brought instead under Sec. 10(b) and thereby nullify the effectiveness of the carefully drawn procedural restrictions on these express actions.
 
 
 47
 425 U.S. at 208-210, 96 S.Ct. at 1388-1389.
 
 
 48
 The Supreme Court has thus drawn a clear line of demarcation between the causes of action, assuring that they can coexist without invalidating the procedural restrictions applicable to each.
 
 
 49
 Despite the Supreme Court's clear separation of the two causes of action, the defendants argue that there are "inescapable anomalies" between them, citing for support the much-quoted Ninth Circuit opinion in Ellis v. Carter, 291 F.2d 270 (9th Cir.1961). In Ellis, the court noted four possible alternatives in dealing with the interplay of the express remedy provided to a buyer of securities under Section 12(2) and the implied remedy in favor of both the purchasers and sellers under Section 10(b). The court indicated that the sections could be read
 
 
 50
 (1) As permitting no civil actions to either buyer or seller on the ground that the 1933 and 1934 acts were too closely drafted to permit the inference of any private remedies in addition to those expressly provided in sections 11 and 12 of the 1933 act, and sections 9(e), 16(b) and 18(a) of the 1934 act...
 
 
 51
 (2) As permitting sellers but not buyers to sue under the rule, thereby giving both buyers and sellers a civil remedy but limiting that of buyers to the remedies provided in the 1933 act...
 
 
 52
 (3) As permitting buyers as well as sellers to sue under the 1934 act, but to make buyers' actions thereunder subject to the same restrictions as provided for them in the 1933 act...
 
 
 53
 (4) As permitting buyers as well as sellers to sue under section 10(b) and rule 10b-5 without any distinction whatever, free of the restrictions imposed under the 1933 act...
 
 
 54
 291 F.2d at 273.
 
 
 55
 The court adopted the last alternative noting that this "construction has the virtue of giving both buyers and sellers a civil remedy and giving buyers the same unrestricted remedy which is given to sellers, no reason being shown why Congress should have intended to treat them differently." Id. The defendants emphasize, however, the court's concession that "this construction is saying in effect that the procedural restrictions which Congress carefully provided in the 1933 act with regard to a buyer's civil remedy were completely nullified or ignored by Congress a year later in giving buyers an unrestricted civil remedy." Id.
 
 
 56
 The flaw in the defendants' reasoning is their failure to recognize that Ellis was written long before the Supreme Court laid down the Hochfelder rule making proof of scienter an indispensable ingredient in all Section 10b-5 actions. In fact, the argument that a showing of fraud is essential to a Section 10(b) claim was raised by the parties but rejected by the Ellis court. Therefore, Ellis' assumption of an "inherent anomaly" between Sections 12(2) and 10(b) was made in the absence of this important distinction and although understandable, it is no longer a valid observation of the law as it exists today.4. Statutory Construction.
 
 
 57
 Although the defendants urge us to consider principles of statutory construction, the defendants' interpretation of Section 10(b) ignores the plain language of the statute which should be the "starting point" in every case involving statutory construction. Ernst & Ernst v. Hochfelder, supra, 425 U.S. at 197, 96 S.Ct. at 1382, quoting Blue Chip Stamps, supra, 421 U.S. at 756, 95 S.Ct. at 1935 (Powell, J., concurring). The defendants contend that Section 10(b) applies only to those claims that could not be brought under one of the express remedies contained in the securities laws. If we applied this rule, since Section 12(2) provides for a cause of action in favor of buyers, but not sellers, a defrauded buyer would be limited in many situations to the negligence remedy of Section 12(2), whereas sellers would remain a potential class of plaintiffs under Section 10(b). This result is totally inconsistent with the text of Section 10(b) which makes no distinction between buyers and sellers but, by its very terms, condemns fraud "in connection with the purchase and sale of any security." To accept the defendants' interpretation of the statute would be to abandon intended beneficiaries of Section 10(b). We cannot condone such a disturbance of the statutory language.
 
 
 58
 5. Legislative Intent.
 
 
 59
 In addition, to hold that conduct is not covered by Section 10(b) when it is covered by another section of the securities laws, would appear to frustrate Congress' intent that Section 10(b) act as a general anti-fraud provision, a "catch-all clause to prevent manipulative devices." Ernst & Ernst v. Hochfelder, supra, 425 U.S. at 202, 96 S.Ct. at 1385 (quoting Thomas G. Corcoran, spokesman for the drafters of the statute).
 
 
 60
 There is a further indicator of congressional intent regarding the matter before us. As discussed earlier, beginning with the Fischman decision in 1951, numerous federal courts have upheld the existence of a Section 10(b) remedy for misconduct for which there was a specific remedy available under other sections of the securities acts. During these years, Congress has addressed the subject of securities regulation many times and has, in fact, amended the securities acts three times. But Congress has never taken action to remove the availability of an implied action under Section 10(b) when other express remedies may apply. This silence suggests that Congress believes the interpretation given to Section 10(b) by the courts is neither wrong nor too far-ranging.
 
 
 61
 This reasoning was utilized by the Supreme Court in Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) to support its decision upholding the Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2nd Cir.1952) doctrine that only actual purchasers and sellers of securities may sue for violations of Section 10(b) and Rule 10b-5. The Court stated:
 
 
 62
 The longstanding acceptance of the courts, coupled with Congress' failure to reject Birnbaum's reasonable interpretation of the wording of Sec. 10(b), wording which is directed toward injury suffered "in connection with the purchase or sale" of securities, argues significantly in favor of acceptance of the Birnbaum rule by this Court. Blau v. Lehman, 368 U.S. 403, 413 [82 S.Ct. 451, 456, 7 L.Ed.2d 403] (1962).
 
 
 63
 421 U.S. at 733, 95 S.Ct. at 1924. See also Merrill Lynch, Pierce, Fenner & Smith v. Curran, 456 U.S. 353, 385-87, 102 S.Ct. 1825, 1843, 72 L.Ed.2d 182 (1982); Wachovia Bank and Trust Co. v. National Student Marketing Corp., 650 F.2d 342, 351 (D.C.Cir.1980).
 
 
 64
 In summary, we hold that the availability of an express remedy under Section 12(2) does not supplant an implied cause of action under Section 10(b). We find justification for our decision in its long history of precedential support, the fact that the two sections involve totally distinct causes of action, the plain language of Section 10(b) itself, and the legislative intent of Congress.[7]
 
 
 65
 Accordingly, the district court's dismissal of the complaint as time-barred is reversed and this action is remanded for further proceedings.
 
 
 
 *
 The Honorable William R. Collinson, Senior District Judge for the United States District Court for the Eastern and Western Districts of Missouri, sitting by designation
 
 
 [1]
 Defendant Rowland filed a motion to dismiss for failure to state a cause of action on the ground that plaintiffs failed to allege scienter, a necessary element of the cause of action under Rule 10b-5. The district court rejected this argument, holding that the plaintiffs' allegation that the defendants "intentionally or recklessly omitted to state a material fact" with respect to the purchases at issue satisfied the scienter requirement. However, Count II of the complaint which alleged a pendent state cause of action under the Missouri Uniform Securities Act was dismissed as time-barred under the applicable state statute of limitations
 
 
 [2]
 Section 12(2) of the Securities Act of 1933 (15 U.S.C. Sec. 77l(2) provides in pertinent part:
 Any person who--
 (2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,
 shall be liable to the person purchasing such security from him who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.
 
 
 [3]
 Section 13 of the Securities Act of 1933 (15 U.S.C. Sec. 77m) provides in pertinent part:
 No action shall be maintained to enforce any liability created under section 77k or 77l(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77l(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77l(1) of this title more than three years after the security was bona fide offered to the public, or under section 77l(2) of this title more than three years after the sale.
 
 
 [4]
 Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. Sec. 78j(b)) provides in pertinent part:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange--* * *
 To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive devise or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
 Rule 10b-5 adopted pursuant to Section 10(b) above (17 C.F.R. Sec. 240.10b-5) provides in pertinent part:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
 
 
 [5]
 In fact, the Supreme Court expressed no opinion on the issue before us, but rather stated:
 Blue Chip did not here present the question of whether an implied action under Sec. 10(b) of the 1934 Act and Rule 10b-5 will lie for actions made a violation of the 1933 Act and the subject of express civil remedies under the 1933 Act. We therefore have no occasion to pass on this issue.
 421 U.S. at 752 n. 15, 95 S.Ct. at 1933 n. 15.
 
 
 [6]
 We direct the reader's attention to the fact that Huddleston is now pending before the United States Supreme Court on certiorari
 
 
 [7]
 As an alternative ground for affirming the decision below, defendant-appellee Rowland urges us to abandon the rule that the statute of limitations applicable to Rule 10b-5 actions is that found in the most nearly comparable state statute. Rather, Rowland would have us substitute the analogous federal statute of limitations in implied actions under Sec. 10(b). We do not believe that the present case presents an appropriate situation in which to overrule this well-established doctrine and, accordingly, decline to adopt Rowland's suggestion